| 90    533
|s51ᴺᵂ 808
|133  ² 98|

## THE BAY CITY BELT-LINE RAILROAD COMPANY v. JOSEPH R. HITCHCOCK AND MENDAL J. BIALY.

*Railroad companies—Organization—Right of way in street—
Condemnation proceedings—Requisites of petition and
survey—Evidence.*

1. The statement in the articles of association of a railroad, com-
   pany formed " for the purpose of constructing, operating, and
   maintaining a railroad, etc.," that its road shall be operated as
   a *transfer road*, and that no discrimination shall be made in
   favor of or against any other railroad, and that uniform rates
   for the same service shall be charged either to persons or rail-
   road companies, does not exclude it from the carriage of
   passengers as well as freight.
2. Neither the map nor certificate of location of a railroad stated
   the gauge or width between the rails, but the articles of asso-
   ciation declared the purpose of the company to be to construct
   a road of the standard gauge, which term is held to be suffi-
   ciently definite, as that gauge in Michigan is so universally
   known that courts and every one else will take notice of its
   width.
3. A map of a proposed railroad on which the center line of the
   track is designated by a colored line indicates with reasonable
   certainty the location of the line, and hence the space to be
   occupied by the standard-gauge road proposed to be laid along
   the line so designated.
4. The certificate of location of petitioner's road, set forth in the
   opinion, is held to comply with the general railroad law.
5. A petition for the condemnation of lands for railroad purposes

JANUARY TERM 1892.

which does not state that the company intends to lay more than one track, the line of which is located according to its map and survey, is not open to the objection that it does not show the number of tracks intended to be laid, as under it the company would have no right to lay more than the one track thus indicated.

6. The statute does not require a railroad company to state the grade of its road in a petition for the condemnation of land for the purposes of its road.

7. A petition for the condemnation of land for railroad purposes must state with accuracy the quantity of land to be taken; and in cases where the right of an adjoining owner to the use of a street is the subject of condemnation, the extent of the owner's frontage upon the street should be accurately stated, as this must affect the nature and extent of his injury, and the just compensation to be made to him.

8. In a proceeding to condemn land for railroad purposes, testimony that other persons than the respondents had donated the right of way is inadmissible.

9. Where three separate parcels of land are affected by proceedings to condemn a railroad right of way in a street, each parcel should be considered, and damages awarded separately for each.

Appeal from probate court of Bay county. Argued February 4, 1892. Decided March 11, 1892.

Proceedings to condemn lands for railroad right of way in street. Respondents appeal from the confirmation of award of jury. Order of confirmation vacated, and report set aside as to appellants, and case referred to same jury, with leave to amend petition, etc. The facts are stated in the opinion.

*Hatch & Cooley,* for respondents and appellants.

*C. L. Collins* (*T. A. E. Weadock,* of counsel), for petitioner and appellee.

LONG, J. On the 7th day of August, 1890, the petitioner filed its petition in the probate court of Bay county for the purpose of acquiring the right to construct

a railroad on certain lands, which in the petition are claimed to be in a street called "Water Street," or "River Street," in Bay City, and along that portion of the so-called street where it passes over or in front of the lands of certain persons mentioned in the petition, and, among others, the lands of the respondents. Notice of hearing upon said petition was given. The respondents appeared, and filed an answer, making certain objections to further proceedings. A preliminary hearing was had before the probate court upon the objections made in the answer, and they were overruled, to which rulings the respondents excepted. Subsequently a jury was impaneled to ascertain the damages. A circuit court commissioner was appointed, under the statute, to attend the jury, and a trial was had before the jury, upon which a large amount of testimony was taken and returned into court with the verdict or finding. The finding of the jury was in favor of the petitioner, and assessed the damages of the respondents at the sum of $500. Afterwards, and on the 10th day of October, 1890, the finding was approved and confirmed by an order of the court, and on the 30th day of October, 1890, the respondents gave notice of an appeal to this Court.

The premises over which the petitioner sought to acquire the right to run its railroad are situated in the southerly part of Bay City. North of these premises, and coming down to a point within four or five hundred feet of the respondents' lands, is a street known as "Water Street," which passes along near the river, and is one of the public thoroughfares of the city. Then occurs a break in the continuity of the street, where the property known as "Miller & Lewis' Mill and Salt-Works" is situated. Passing thence southerly lies the so-called street in question, running next to and parallel with the Saginaw river. It is sometimes called "Water

Street," and sometimes on the maps it is called "River Street."

The lands owned by the respondents do not lie in one body. In the petition they are described in three parcels, viz.:

"The following described property abutting on said Water street, that is to say:

"1. Lots 11 and 12 of block 1, and entire block 2, of said Tromble's addition, with a frontage of 489 feet abutting the west side of said Water street.

"2. Lots 5 and 6 of block 4 of said Tromble's division of Portsmouth, with a frontage of 100 feet abutting the east side of said Water street.

"3. And that tract of real estate in Bay City bounded as follows: On the north by Thirty-Seventh street, on the east by Harrison street, on the west by Water street, with a frontage of about 108 feet thereon.

"—Each belonging to Joseph R. Hitchcock and Mendal J. Bialy, who are each residents of Bay City, Mich."

The record title of said real estate is in Hitchcock, but Bialy has an interest therein. First is the land which constitutes the respondents' mill-site, which lies next to the Saginaw river, and is bounded on the south by South Center street, east by the so-called "Water Street," and extends north from South Center street a distance of nearly 600 feet. It is irregular in shape, being wider at the south end than at the north end. It is about 142 feet wide at the south end, and 97 feet wide at the north end. Across this so-called "Water Street" to the east are two lots of land, which constitute the respondents' second parcel, having a frontage of about 100 feet on Water street, and lying adjacent to South Center street. The third parcel is situated to the south, and is bounded on the north by Thirty-Seventh street, and on the west by Water street. Coming from the north, and passing along Water street, is a transfer track of the Michigan Central Railroad Company. It

runs in front of or over the respondents' premises. It is an ordinary gauge, the distance being about four feet eight and one-half inches from rail to rail. It is used by the Michigan Central Railroad Company only in the night-time. This road extends some distance south of the premises in question.

A part of the controversy turns upon the question whether the petitioner is organized under the general railroad act, and therefore has the right to exercise the power of eminent domain. Other questions arise in respect to the maps, and the certificate of the directors attached thereto, filed by petitioner in the office of the register of deeds for Bay county. A copy of the map and certificate was returned with the record. Other objections lie to the petition, which has the same defects as the map, and other objections lie to the action of the circuit court commissioner and jury in admitting testimony.

The first objection made in the notice of appeal is to the articles of association of the petitioner. The objection is that the petitioner is not organized in conformity with the act referred to in the petition, viz., the general railroad law of the State, approved May 1, 1873, and the acts amendatory thereof, because it appears by the articles of association of the petitioner that it is organized solely with the intent and for the purpose of being operated as a transfer road, and not for the purpose of doing a general railroad business, to wit, the carrying of passengers and freight.

The force of this objection rests upon a clause of the articles of association. Section 6 of the articles reads as follows:

"Said road shall be operated as a tranfer road, and no discrimination shall be made in favor of or against any railroad now, or that may hereafter be, built into or

through said Bay City, and uniform rates for the same
service shall be charged either to persons or railroad com-
panies by said Belt-Line Railroad."

The articles themselves do not declare under what act
the company is formed, but in the petition it is stated
that the company is duly incorporated under the act
entitled—

"An act to revise the laws providing for the incor-
poration of railroad companies, and to regulate the run-
ning and management, and to fix the duties and liabili-
ties, of all railroads in the State," approved May 1;
1873.

By the seventh subdivision of section 9 of the act
(How. Stat. § 3323, subd. 7), railroad companies are
authorized—

"To take, transport, carry, and convey passengers and
property on their said road," etc.

By section 10 (How. Stat. § 3324) it is provided that—

"Every such corporation shall furnish sufficient accom-
modation for the transportation of all such passengers
and property as shall, within a reasonable time previous
thereto, offer or be offered for transportation at the
place of starting,  *  *  *  and shall take, transport,
and discharge such passengers and property at, from,
and to such places," etc.

Section 3326 requires that—

"All railroads shall keep their ticket-offices open for
the sale of tickets at least twenty minutes," etc.

It is urged that these provisions, and numerous others
that might be cited, all go to show that under this act
a railroad company must engage in both branches of the
business, as well the carrying of passengers as the trans-
portation of freight or freight-cars, and the act does not
contemplate the organization of the company for only
one such purpose; that this company has organized for
only one such purpose, and therefore it is not organized

under or in pursuance of this act; that, not being organized under this act, it has not the power of eminent domain, and cannot institute proceedings to acquire the property of others for its use in the manner pointed out by the act.

We do not think this objection tenable.   Section 6 of the articles of association does not limit the business of the corporation to the transportation of freight, but asserts merely that no discrimination shall be made in favor of or against any railroad, and that "uniform rates for the same service shall be charged either to persons or railroad companies."   The purpose for which the organization is formed is declared in section 1 of the articles of association, wherein it is stated that they organize "into a corporation for the purpose of constructing, operating, and maintaining a railroad of standard gauge," etc.   The statement that the road shall be operated as a transfer road does not exclude it from the carriage of passengers as well as freight.

The second objection made in the notice of appeal is that the petitioner has not filed in the office of the register of deeds of Bay county such a map of its proposed railroad line as is required by the statute in such case made and provided; that the maps which the said petitioner has filed in the said office of the register of deeds do not show the location of its line with sufficient accuracy, where the same passes along, near, or across the lands of these respondents.

The third objection is, in substance, that said map does not show the width of the space which will be occupied by the petitioner's proposed railroad track, where the same passes along, near, or over the lands of these respondents, or to what extent or how much of said proposed railroad track will occupy said lands, or whether the said street is to be occupied with one or more lines

of railway. These objections relate to each other, and may be considered together.

The map in question gives us a plan of that part of Bay City where the proposed railroad is to be laid, showing streets, blocks, and lots. Parallel red lines are shown, supposed to indicate the rails of the track of the Michigan Central Railroad. The route of the petitioner's road is supposed to be indicated by a single blue line. This blue line comes from the north at Thirteenth street; passes along Water street; thence, by a reverse curve to the southwest, across the lands of Miller & Lewis, where it enters the northerly portion of block No. 3, in the plat of Tromble's division. In front of lot 4 of said block, to the west, it enters this so-called "Water Street" or "River Street;" passing thence to the south, with 6 degrees curve, it continues to the intersection of Thirty-Third street; thence, in nearly a due southerly course, it continues along the street in a straight line for upwards of a thousand feet, past the lands of the respondents. The only thing on the map to indicate the location of the petitioner's line where it passes in front of the respondents' land, aside from the general features and scale of the map, is the following: At the point where the south line of Thirty-Third street would cross Water street or River street, if extended west, there are two check-marks, thus, "x x." One of these is placed between the two red lines representing the Michigan Central track, and the other on the above-described blue line. Between these two check-marks we read the figures "14." The marks and the figures are very small and difficult to read. Now, passing south from that place to a point where the north line of lot 5, in block 4, would cross Water street if projected, we see similar marks, and the figures "14" between them. Further south, in the center of the intersection of Thirty-

Fifth street with River street, these marks and figures are again repeated.

It is claimed by appellants' counsel that, beyond what we have now called attention to, there is nothing to indicate the location of petitioner's track or tracks, or the width of the track or tracks, or the space which they will occupy in width, or how many tracks are intended to be laid; that, considering the provisions of the general railroad law, as embodied in sections 3323, 3332, How. Stat., it is in effect provided that a railroad company may acquire the right to construct its road upon a street, but such railroad is not to be constructed on a street until damages and compensation are paid to abutting land-owners, and that such damages are to be determined either by agreement or ascertained by condemnation proceedings; that, if condemnation proceedings are resorted to, the proceedings are governed by the provisions of the statute applicable to those cases where the land itself is to be taken by the railroad company, and by those provisions of the statute requiring the making of a survey and map by which said route is designated, and the company must have located its road in accordance therewith; and that, where its road is located so as to pass along a street, the map should show just the width of the space in the street which will be occupied by the road, else the whole thing is at sea.

The map shows that the central line to be occupied by the track of the company is designated by the blue line. It is true that neither the map nor certificate states the gauge or width between the rails of its track, but the articles of association declare the purpose to be to construct a road of the standard gauge, and that is sufficiently definite, as that gauge in Michigan is so universally known that courts and everybody else will take notice of its width. The testimony of the engineer was that the

figures "14" represented the distance in feet between
the center of the Michigan Central Railroad Company's
track then in the street and the center of the petition-
ing company's track. The map does not state whether
the figures "14" represent feet, inches, links, or rods,
but no one would be misled into the idea that they rep-
resent either inches, links, or rods. To say that they
represent either inches or rods would be preposterous. To
say they represented links would leave about 3 feet and
9 inches between the rails of the two tracks, which
would be equally preposterous. We conclude, therefore,
that the map indicates with reasonable certainty the
location of the center line of appellee's track, and hence
the space to be occupied by the standard-gauge road laid
along the line so indicated.

The fourth objection in the notice of appeal lies to
the certificate of location filed in the register of deed's
office by the directors of the petitioning company. The
objection is that no certificate has been filed showing
the location of the road in such way and manner and
with the precision required by the statute, but that the
certificate is defective in all those respects wherein the
said map is defective. The certificate referred to is in-
dorsed on the map, and is as follows:

" STATE OF MICHIGAN, }
     County of Bay.     }
     " We, the undersigned, being a majority of the
directors of the Bay City Belt-Line Railroad Company,
hereby certify that this map and survey is a map and
survey of a portion of the route adopted by said railroad
company for its railroad in Bay county, Michigan, viz.,
of that portion or section of said route extending from
the south line of Thirtieth street in Bay City, Bay
county, Michigan, as shown on the map, to the south
line of South Center street, in Bay City, Bay county,
Mich., as shown thereon; that said railroad company has
located its railroad between said points according to said
map and survey; and this certificate is executed for the

purpose of filing said map and survey in the office of the register of deeds for said Bay county, pursuant to the provisions of the general railroad law of Michigan.

"In witness whereof we have hereto set our hands and seals this 10th day of February, A. D. 1890.

"JOSEPH TURNER,
"C. L. COLLINS,
"GEORGE TURNER,
"W. I. BROTHERTON,

"Directors of the Bay City Belt-Line Railroad Company."

We think the certificate complies with the general railroad law. Section 3332, How. Stat.

The fifth objection in the notice of appeal lies to the petition, and, in substance, is as follows:

1. Because the petition does not show or describe the precise location of the road in the street.

2. Because it does not show how much or to what extent the street will be taken up or occupied with the proposed road or the width of the tracks.

3. Because it does not show the number of tracks which the petitioner proposes to lay in the street.

4. Because it does not show in what part of the street the tracks are to be laid.

5. Because it does not show the grade upon which the road is to be laid.

The 1st, 2d, and 4th objections are in relation to points already passed upon, and need not be further noticed.

The 3d objection is not tenable. The petitioner does not assert that the company intends to lay more than one track, and the line of this is located according to the map and survey, and the company would have no right to lay more than the one track indicated.

The 5th objection is also of no force. The statute does not require the petitioner to state the grade of the road.

The sixth objection in the notice of appeal is based upon the claim that the petition does not correctly show

the extent of the lands of respondents affected by the proposed road. The lands of the respondents referred to in the petition are divided into three parcels: 1. The lands described in the petition as—

"Lots 11 and 12 of block 1 and entire block 2 * * with a frontage of 489 feet, abutting the west side of Water street."

This is respondents' mill-site.

2. "Lots 5 and 6 of block 4, * * * with a frontage of 1,00 feet abutting the east side of said Water street."

This is a parcel directly across Water street from the mill-site.

3. "And that tract of real estate in Bay City, bounded as follows: On the north by Thirty-Seventh street, on the east by Harrison street, on the west by Water street, with a frontage of 180 feet thereon."

This latter is a parcel some distance south of the first two, and is situated on the east side of Water street, being, "bounded" by that street "on the west." But the mill-site, instead of having 489 feet frontage on Water street, in fact has a frontage on that street of 566 feet. This fact was not seriously disputed on the trial. Petitioner's counsel in their hypothetical questions assumed it, or assumed a longer frontage, and it was admitted in the testimony of the petitioner's engineer, George Turner. In the verdict of the jury, the frontage of the first parcel is not given, although the frontage is made to conform to the frontage mentioned in the petition as to the other two parcels. The same omission occurs in the order of confirmation. We think this objection fatal to the award, and in fact to the petition in its present form. It is always required that the petition must state with accuracy the quantity of land to be taken; and in proceedings such as this, where the right

of the adjoining owner to the use of a street is the subject of condemnation, and the compensation to be made consequent upon putting the property to a use not intended by the dedication, the extent of the owner's frontage upon the street should be accurately stated, as this must affect the nature and extent of his injury, and the just compensation to be made to him.

The seventh objection rests upon the ground that there was no street or highway at the place mentioned; that is, that Water street or River street did not, in fact, exist in front of or over the respondents' land (parcels 1 and 2).

The eighth objection is, in substance, that, if the evidence showed the existance of a street, it also showed that it did not exceed 30 feet in width, whereas the petitioner's map shows the street 50 feet in width.

The petitioner, in its maps and petition, assumes that a street runs along on the east side of the first parcel described in the petition, between that and respondents' second parcel described in the petition. On the map the street is marked "50," which we suppose, and the scale of the map would indicate, to mean 50 feet. George Turner, the petitioner's engineer, testified that it was 50 feet in width. Testimony was introduced tending to show that this land was never legally platted, but the testimony also shows that there was a dedication by user, and we do not think the seventh and eighth objections tenable.

The ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth objections relate to errors in admission of testimony, particularly as to the testimony showing that other persons than appellants had freely given the right of way. This testimony was inadmissible, and should have been excluded by the jury.

90 MICH.—35.

The order of the court confirming the report of the jury is vacated, and the report is set aside as to the appellants, and the case is referred back to the same jury, with leave to the petitioner to amend its petition as to the frontage and the description of land belonging to the appellants to be affected by the condemnation proceedings.

Inasmuch as there must be a new award, it will not be improper to suggest an objection to the report not noticed by the appellants, in order that it may be obviated in the further proceedings. The damages appear to have been awarded in a lump sum for the compensation accruing by reason of three separate descriptions. Each parcel should be considered, and the damages awarded separately for each parcel.

The appellants will recover their costs of this appeal, to be taxed against the petitioner.

The other Justices concurred.