CHICAGO, DETROIT & CANADA GRAND TRUNK JUNCTION RAILROAD CO. v. JACOBS.

1. EMINENT DOMAIN—MANDATORY UPON COURT TO CONFIRM JURY'S AWARD UNLESS GOOD CAUSE SHOWN.

In condemnation proceedings under 2 Comp. Laws 1915, § 8256, it is mandatory upon the court to confirm the jury's report finding a necessity for the taking of the land, and fixing the amount of the award therefor, unless the defendants show good cause why the court should refuse to do so.

2. SAME—JURISDICTION—GOOD-FAITH EFFORT TO PURCHASE SHOWN.

Evidence that plaintiff's agent offered defendants $300 an acre for the land involved, and that defendants demanded $15,000 therefor, *held*, to show such discrepancy of views upon the subject of value as to render further negotiations

On judicial power over the right of eminent domain, see note in 22 L. R. A. (N. S.) 1.

useless and to show sufficient effort to purchase to give jurisdiction in condemnation proceedings.

3. SAME—FINDINGS AS TO NECESSITY AND DAMAGES SUPPORTED BY EVIDENCE.

The determination of the jury upon the issues of public necessity and damages awarded in the case, *held*, supported by ample competent testimony.

4. SAME — JURY'S DETERMINATION CONCLUSIVE IF SUPPORTED BY EVIDENCE.

Where the determination of the jury in condemnation proceedings is supported by competent testimony it will not be interfered with on appeal.

5. SAME—EVIDENCE—ADMISSION OF PRIOR LITIGATION NOT ERROR.

Where the land sought to be condemned had been previously involved in litigation affecting the interests of the parties to this litigation, out of which had grown charges of sinister motives on the part of both parties, there was no error in admitting a cross-bill against the present defendants in response to a juror's request to "Let us hear the whole thing;" there being no suggestion that the jury were given only a one-sided view of the controversy.

6. SAME—JURY JUDGES OF LAW AND FACTS—JURY HAS LARGE DISCRETION.

The jury in condemnation proceedings is a jury of inquest, authorized to act as judges of the law and facts, with the judge attending only in an advisory capacity, and large discretion is given the jury in taking testimony and other particulars, which does not bind them to the strict rules of evidence and technicalities of trial in *nisi prius* courts.

7. SAME—PLEADINGS—ISSUES RAISED—JURISDICTION ADMITTED.

Where plaintiff's petition in condemnation proceedings indicated that it was drawn in compliance with the statute, and defendants' answer thereto raised no issue of jurisdiction for failure to comply therewith, and defendants, without preliminary motion touching the subject, demanded a jury and went to trial upon the issues presented by the pleadings, the jurisdiction was thereby admitted.

Appeal from Macomb probate court; Brown (George L.), J. Submitted June 12, 1923. (Docket No. 32.) Decided January 7, 1924.

Condemnation proceedings by the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company against Henry Jacobs, Jr., and others.    From an order confirming an award of the jury, defendants appeal.    Affirmed.

*Lynch & Lovett,* for appellants.

*Harrison Geer,* for appellee.

STEERE, J.    On September 11, 1922, the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company filed its petition to condemn a triangular piece of land amounting to about 2.4 acres situated at the intersection of its line with a highway in Macomb county, known as the Nine Mile road.    The land is located on the south side of the highway west of and adjacent to the railroad's right of way.    It fronts a little over 350 feet on the highway and extends 500 feet along petitioner's right of way, the length of the third side being a fraction over 696 feet.    At the time of this hearing the railroad had been in possession of this land since 1916, claiming ownership until shortly before this proceeding was begun, by mesne conveyances under a deed dated March 24, 1916, given to one Alexander, who represented the railroad, by Alfred Foerster and wife, who claimed title by peaceable adverse possession extending over a period of some 28 years.    It was low, level land, poorly drained, and at times covered with water. The railroad acquired it for yard purposes and during that year expended several thousand dollars in raising its level by earth filling, extended a side-track over it and has since maintained and used this triangle as part of its terminal facilities in that locality known as the Gillin yard.

In June, 1916, one Emma Siefferlein who claimed ownership by record title commenced a suit in the Macomb county circuit court, in chancery, against

John C. Foerster *et al.* to set aside certain deeds and establish her title to the triangle.    Defendants answered in denial and asked affirmative relief.    A decree was rendered in her favor in that court, and affirmed in this court on March 30, 1922 (218 Mich. 179).

About the time that litigation was commenced, defendants Henry Jacobs and Edward Bloink negotiated with Mrs. Seifferlein for purchase of the property and secured from her, on a payment down of $50, a land contract for the same running to Jacobs for a consideration of $3,500, stated in the contract at their suggestion at $4,500.    In her answer to a subsequent bill for specific performance filed against her by Jacobs and a real estate agent of Detroit named Young, she alleges they fraudulently induced her to sign it by—

"telling her that it was no place for a woman to have to stand against the agents and employees of said railway company, and if she would sell her property to them that they would fight the railway company for her and would have no more trouble, and that they would forever hold her harmless from any claim which said Grand Trunk Railway Company had made or would make."

That litigation was subsequently adjusted and a deed given by her on August 15 1922, to the defendants in this proceeding.

After unsuccessfully attempting to acquire this property from defendants by negotiation, petitioner commenced these condemnation proceedings, in September, 1922, before the probate court of Macomb county under the provisions of section 8260 2 Comp. Laws 1915, which concludes as follows:

"*Provided*, Any railroad company which have heretofore entered upon, taken, occupied and used any lands within this State for the purpose of their road, shall have the same right to acquire title to, or right of way over, said land so taken by them, as if they had

proceeded to acquire said title or right of way before having entered upon the same."

Defendants filed an answer on October 10, 1922, and in an order of that date for a jury the court stated that the "parties being in court by their respective attorneys and no cause being shown why the prayer of the petition should not be granted, and the parties respondent having demanded a jury," the court therefore ordered a proper list to be prepared by the sheriff and a jury summoned as the law provides.

The case was thereafter duly heard before the court, and a jury, legally drawn and summoned, which after hearing the proofs and allegations of the parties found that the alleged necessity existed and made an award to defendants as follows:

"1. To Henry Jacobs, Jr., and Lillian Jacobs, his wife, thirteen hundred and thirty-three and 73/100 dollars as follows: $901 13/100 for land, $432 54/100 for rental, 06/100 for damages.
"2. To Edward Bloink and Marguerite Bloink, his wife, thirteen hundred and thirty-three and 73/100 dollars as follows: $901 13/100 for land, $432 54/100 for rental, 06/100 damages."

With their verdict the jury filed a signed report setting out at length their findings and award. A motion by plaintiff for confirmation of the verdict and by defendants to set aside the award were made and argued, the first being granted and the second denied, followed by an order of the court affirming the report of the jury with full recitals and directions in compliance with the requirements of section 8256, 2 Comp. Laws 1915. This section in mandatory terms made it the duty of the court to confirm the jury's report, unless defendants showed good cause why the court should refuse to do so.

Amongst the causes most strenuously urged before that court, and here, are gross inadequacy of the award

and that plaintiff made no good faith attempt as the law requires to obtain the property by purchase before commencing these proceedings. Those two questions involve issues which to a degree run with each other under the proofs. There was testimony to support plaintiff's contention and the finding of the jury as to each.

It is undisputed that before these proceedings were begun an authorized agent of plaintiff interviewed defendants and the real estate agent, Young, who claimed to have purchased a half of Bloink's half interest in the property. He explained to them that he represented plaintiff and his mission was to see if they could arrive at an amicable understanding regarding the purchase of this property. During the interview he offered them for it $300 an acre, which was its assessed valuation for that year. This they declined to seriously consider, their nearest counter offer being that their price was $15,000. Jacobs said "he could not do anything about that," stating what he claimed it had cost him, and his wife's reply was to like effect. Young laughed at the offer and said they asked $15,000 for the property. Bloink scouted the offer and replied that if he wanted to talk business they might talk about $5,000 an acre. His wife said the offer was "ridiculous," but that whatever her husband said about it would be all right.

Defendants' contentions that no good faith offer to purchase the property was made before commencing condemnation and that the jury in disregard of its sworn duty made a "grossly inadequate and unjust award" are both based on their claim and testimony as to the value of this triangle. No affidavit or special showing was made, or claimed beyond what is argued from the result, that the jury were tampered with or influenced by prejudice, partiality or any dishonest motives to act in violation of their trust, except as it is urged inferable from the claimed grossly in-

adequate verdict.    The testimony of the respective
sides was palpably wide apart on the issue of value.
With the discrepancy of views upon that subject both
by litigants and witnesses it would seem that further
attempt to purchase would be useless.    Under the
circumstances shown sufficient effort in that direction
was made to give jurisdiction for these proceedings.
*Detroit, etc., R. Co.* v. *Campbell,* 140 Mich. 384; *Michigan Cent. R. Co.* v. *Miller,* 172 Mich. 201.

Jacob Hartsig, who lived in that township and had
during several years been its supervisor, testified that
he was well acquainted with land along the Nine Mile
road, and knew the property in controversy since
boyhood.    It was a low, flat, muddy hole and a bad
place on the highway.    During all the time he was
supervisor the Grand Trunk line ran along there and
had drained it to some extent, and he more recently
noticed that it was filled up in pretty good shape,
"from two to three feet in there."    He was familiar
with land values in that vicinity, and in his opinion
"in the condition it is now it is worth between two
and three hundred dollars per acre," that he had
"looked it over very carefully this spring" and they
assessed it at $300, the same as it was the year before.    Various witnesses of plaintiff placed its value
at from $150 to $300 per acre for farming or gardening purposes, for which it had been used until plaintiff
took possession of it.    Other witnesses of plaintiff
engaged in the real estate business appraised it at
from seven to eight hundred dollars per acre in its
present condition in view of possible purposes for
which it might be available.    One of them had
within the last year bought property facing along this
road "a mile closer to VanDyke" for $425 per acre
on easy terms and was offering it for sale at $700
per acre.    Another dealer of 13 years' experience
who handled property in that locality told of a piece
of land along the Grand Trunk which he had bought

for $275 per acre and was offering for $500 per acre, and of other lands in that vicinity bought at similar prices.

In this kind of proceeding the jury is especially recognized as trier of the facts. The determination of the jury upon the issues of public necessity and damages awarded in the case was supported by ample competent testimony. Where such is the situation—

"It has been the uniform practice not to interfere upon the statutory appeal to this court with the determination made by a jury in condemnation proceedings." *United States Gypsum Co.* v. *Kent Circuit Judge,* 150 Mich. 668.

No paramount reason for departing from that rule is manifest here.

Error is urged for defendants on the introduction by plaintiff against objection of certain claimed incompetent and prejudicial testimony. Of that class counsel particularly emphasize the introduction of the records and reading from the cross-bill in the case of Jacobs *v.* Seifferlein for specific performance of contract, before mentioned, urging that it had no bearing on the condemnation issues involved and its prejudicial purpose was apparent. This piece of land had been previously involved for some time in litigation affecting directly or indirectly the interests of the parties to this proceeding and apparently out of it developed charges and counter-charges of sinister motives and conduct not strictly material to the issues involved, nor confined to either side. Jacobs and Bloink claimed to have secured this property from Mrs. Seifferlein in good faith as innocent purchasers for the purpose of a coal yard, which, plaintiff disputed, claiming other and sinister purposes, while plaintiff claims to have bought it from Foerster innocently and in good faith for its yard necessities with no ulterior motive to circumvent Mrs. Seifferlein which defendants strenuously controvert. It

was shown that Jacobs' contract from her swelled the agreed price $1,000, and plaintiff contended that as bearing upon his claimed ulterior purposes against it proof of his litigation with her and what she claimed in her defense was competent. When it was objected to one of the jurors ruled "Let us hear the whole thing," to which the court acquiesced and her cross-bill was read. Defendants were represented by able counsel and as the matter was staged the record does not suggest that the jury was only given a one-sided view of that feature of the controversy.

The jury in condemnation proceedings is a jury of inquest authorized to act as judges of the law and facts, with the judge attending only in an advisory capacity. At such inquest large discretion is given the jury in taking testimony and other particulars, which does not bind them to the strict rules of evidence and technicalities of trial in *nisi prius* courts. *Michigan Air Line Ry.* v. *Barnes,* 44 Mich. 222; *Toledo, etc., R. Co.* v. *Dunlap,* 47 Mich. 456; *Detroit, etc., R. Co.* v. *Crane,* 50 Mich. 182; *Grand Rapids, etc., R. Co.* v. *Cheseboro,* 74 Mich. 466; *Union Depot Co.* v. *Backus,* 92 Mich. 34.

The further contention is made that the court was without jurisdiction because plaintiff did not set up in its petition or prove that the proper action was taken by its board of directors "authorizing the taking of the land in question for spur tracks," as required by section 8262, 2 Comp. Laws 1915. Plaintiff was in possession of the property by purchase from Foerster, had improved and was using it as a part of its yardage at that point, its title having been held invalid in a subsequent litigation between Mrs. Seifferlein and Foerster it became necessary in order to retain it for condemnation proceedings to be instituted. They were instituted by authority of sections 8252 and 8260 relating to obtaining land for railroad purposes including yards, and defendants' answer is not in denial

of the first three paragraphs in plaintiff's petition which indicate it was drawn with reference to and in compliance with section 8252. The answer raised no issue upon the objection now urged. Defendants made no preliminary motion touching that subject, demanded a jury and went to trial upon the issues presented by the pleadings, thereby admitting jurisdiction which, however, we think may be said in the absence of a contrary showing to be fairly inferable from the petition.

After a careful consideration of this entire record we are content to adopt as applicable the following conclusions by Justice HOOKER in *Saginaw, etc., R. Co. v. Bordner,* 108 Mich. 236:

"In this case the jury have determined the necessity, upon testimony tending to show it, and a view of the premises, and we will not review the question further than to ascertain that there was evidence to support the verdict."

The order of the court below confirming the report of the jury will stand affirmed.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.