*In re* HURON-CLINTON METROPOLITAN AUTHORITY'S
PETITION AS TO BELLEVILLE LAKE PARK PROJECT.

1. EMINENT DOMAIN—AMENDMENT OF PETITION—WITHDRAWAL OF
PARCELS.

Under statute relating to condemnation proceedings of private
property by public corporations, a plaintiff may amend its
petition by withdrawing parcels of land therefrom if the
amendment does not interfere with the substantial rights of
the parties (1 Comp. Laws 1929, § 3774).

2. SAME—AMENDMENT—WITHDRAWAL OF PARCELS—PREJUDICE—
EVIDENCE.

Proposed amendment of a metropolitan authority's petition for
the condemnation of 110 parcels of land containing approx-
imately 1,000 acres for a lakeside park project so as to with-
draw seven parcels from the proceedings, which amounted to
a discontinuance of the proceedings as to such parcels before
rendition of verdict, should have been granted in the absence
of a showing by defendants that such amendment would be
prejudicial to them or deprive them of a fair and impartial
determination of their rights (1 Comp. Laws 1929, § 3774).

3. SAME—PUBLIC CORPORATIONS—DISCRETION—QUANTITY OF LAND TO
BE TAKEN.

A public corporation, as a condemnor of private property, has
a discretion in determining the quantity of land necessary
for its use and such discretion will not be interfered with ex-
cept in case of abuse (1 Comp. Laws 1929, § 3763 *et seq.*).

4. SAME—METROPOLITAN AUTHORITY—DISCRETION—IMPROVEMENTS.

The public interest was properly protected from excessive ex-
pense by a metropolitan authority, authorized to acquire pri-
vate property by purchase, gift, devise or condemnation pro-
ceedings, in exercising its discretion not to acquire for its
lakeside park project two parcels of land upon which extensive

buildings and improvements had been made by amending its
petition to condemn so as to withdraw such parcels (1 Comp.
Laws 1929, § 3763 *et seq.*; Act No. 147, Pub. Acts 1939).

5. SAME—WITHDRAWAL OF PARCELS—BARTER OF RIGHT TO CONDEMN
  —AMENDMENT OF PETITION.
    In the absence of a showing that metropolitan authority's with-
    drawal of two parcels from petition to condemn 110 parcels
    for a lakeside park project was made upon its agreement not
    to acquire or condemn such parcels at some future time or
    that it was made because of fraud, bad faith or abuse of
    discretion, its withdrawal of such parcels in return for dona-
    tion of easement rights along lake, two other parcels and right
    to purchase three more did not constitute a wrongful bartering
    away of its right of eminent domain nor justification for
    denial of motion to amend petition (1 Comp. Laws 1929,
    § 3763 *et seq.*; Act No. 147, Pub. Acts 1939).

6. SAME—FUNCTIONS OF JURY AND JUDGE.
    In a condemnation case the jury are judges of both facts and
    law and after it is impaneled the presiding judge acts only
    in an advisory capacity and cannot give binding instructions.

7. SAME—JURY—DISCRETION—EVIDENCE.
    In condemnation proceedings the jury is one of inquest, has a
    large discretion in taking testimony, and is not bound by
    the strict rules of evidence and technicalities of trial in *nisi
    prius* courts.

8. SAME—NATURE OF CONDEMNATION PROCEEDINGS.
    Proceedings to condemn land are special and summary in charac-
    ter and, while subject to judicial review and supervision for
    certain purposes, are not judicial proceedings.

9. SAME—REVIEW.
    Condemnation proceedings are not reviewed in the same manner
    as if the proceeding were one tried before a court and jury
    according to the course of the common law and appellate
    courts should not interfere unless the errors complained of
    are such as may fairly be said to have a controlling influence
    in securing the result.

10. SAME—NEW TRIAL—DISMISSAL OF PROCEEDINGS.
    Under statute relating to condemnation of private property by
    public corporations the judge may set aside the jury's verdict
    and grant a new trial but may not dismiss the entire proceed-
    ings (1 Comp. Laws 1929, § 3763 *et seq.*).

11. DISMISSAL AND NONSUIT—MOTION TO DISMISS.
    A motion to dismiss is usually founded upon matter apparent
    on the face of the proceedings and will lie where there are
    jurisdictional defects in the pleadings, but not for nonjuris-
    dictional defects or defects which may be cured by amend-
    ment.

12. EMINENT DOMAIN—QUESTION OF NECESSITY—CONDITIONAL DONA-
    TION.
    Deed by which parcels of land were donated to a metropolitan
    authority for its use in connection with a lakeside park project,
    which contained a provision for reverter to grantor in case
    grantee failed to acquire title to a majority of the acreage
    sought within three years or failed to commence development
    of the property within five years, was entirely proper and
    rendered without merit the contention of other defendants
    that such conditional offer to donate was dependent upon jury's
    determination of question of necessity of the proposed public
    improvement and would prejudice the jury in such determina-
    tion.

13. SAME—DONATIONS—PREJUDICE.
    Contention that testimony and statements regarding donations
    of parcels of land for a lakeside park project of a metro-
    politan authority would prejudice jury in condemnation pro-
    ceedings in their determination of the questions of necessity
    and the compensation to be awarded because the donors were
    so prominent in the vicinity was without merit where grantee
    had authority to acquire property by gift.

14. SAME—DISQUALIFICATION OF JUROR.
    Juror in condemnation proceedings brought by a public corpo-
    ration, who was carefully examined as to qualifications by trial
    court prior to taking testimony, was not disqualified to sit as
    juror as to various parcels because it developed during the
    proceedings that his employer was donating certain parcels of
    the property (1 Comp. Laws 1929, § 3763 *et seq.*).

15. SAME—DONATIONS—EVIDENCE—INSTRUCTIONS.
    While trial judge might properly have instructed jury that, in
    determining questions of necessity and award in condemnation
    proceedings, they should disregard any statements or testi-
    mony regarding donations of certain parcels of the property,
    their admission did not vitiate the entire proceedings (1
    Comp. Laws 1929, § 3763 *et seq.*).

16. SAME—DISMISSAL OF CONDEMNATION PROCEEDINGS—REMAND.

Where proceedings to condemn land for use by metropolitan authority as lakeside park project were improperly dismissed and case is remanded, hearing *de novo* before a new jury is ordered because of lapse of time and changed conditions (1 Comp. Laws 1929, § 3763 *et seq.*; Act No. 147, Pub. Acts 1939).

17. COSTS—EMINENT DOMAIN—PUBLIC QUESTIONS.

No costs are awarded upon reversal of order dismissing proceedings to condemn land for metropolitan authority's lakeside park project, public questions being involved (1 Comp. Laws 1929, § 3763 *et seq.*; Act No. 147, Pub. Acts 1939).

Appeal from Wayne; Webster (Clyde I.), J. Submitted June 9, 1943. (Docket No. 45, Calendar No. 42,409.) Decided September 7, 1943.

In the matter of the petition of Huron-Clinton Metropolitan Authority to condemn certain lands. Motion to amend petition by withdrawing certain parcels. Proceedings dismissed. Plaintiff appeals. Reversed and remanded for further proceedings.

*John P. O'Hara,* for plaintiff.

*Tinkham & Snyder* (*Ronald R. Weaver* and *J. Don Lawrence,* of counsel), for defendants Konieczka, Coy, Miank, Wiles, Vincent, Snyder, Subecz, Boelter, Jasas, Polnicky and Domcik.

*James R. Breakey, Jr.* (*Ronald R. Weaver* and *J. Don Lawrence,* of counsel), for defendants Mosley, Bennett and Meyer.

*Jorgensen, Alexander & Matheny,* for defendants Stoddard, Bridwell, Bixman and Brown.

*Levin, Levin, Garvett & Dill* (*Earlmont H. Dill,* of counsel), for defendants Newman Development

Co., Inc., Edison Lake Estates, Inc., Legg and Fassett.

STARR, J.   Huron-Clinton Metropolitan Authority (herein referred to as the "Authority") appeals from an order dismissing its petition for the condemnation of certain lands in Van Buren township, Wayne county, for public park purposes.

The Authority is a public corporation created by Act No. 147, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2289–1 *et seq.*, Stat. Ann. 1942 Cum. Supp. § 5.2148 [1] *et seq.*), for the purpose of planning, developing, and maintaining parks, limited-access highways, and recreational facilities within a district composed of Wayne, Washtenaw, Oakland, Livingston, and Macomb counties.   The constitutionality of said act, which gives the Authority power to acquire land for its purposes by  purchase, *gift,* devise or condemnation, was upheld in *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties,* 300 Mich. 1.

On July 10, 1942, the board of commissioners of the Authority adopted a resolution authorizing the institution of proceedings under 1 Comp. Laws 1929, § 3763 *et seq.,* as amended (Stat. Ann. and Stat. Ann. 1942 Cum. Supp. § 8.11 *et seq.*), to acquire certain privately-owned lands on the northerly side of Belleville lake in Van Buren township, Wayne county, for the purpose of establishing a public park.   In pursuance of such resolution, on September 3, 1942, the Authority filed petition in circuit court to condemn 110 parcels of land containing approximately 1,000 acres.   Such petition asked that a jury be impaneled to determine whether or not it was necessary to make such public improvement; whether or not it was necessary to take such private property for the use and benefit of the public; and to ascertain

and determine the just compensation to be paid therefor. An order was entered for the appearance of those persons named in the petition as having an interest in said property, and such order was published and personally served as required by 1 Comp. Laws 1929, § 3769, as amended by Act No. 296, Pub. Acts 1941 (Comp. Laws Supp. 1942. § 3769, Stat. Ann. 1942 Cum. Supp. § 8.17).

On November 2, 1942, a jury was impaneled and sworn. On November 5th, after the jury had viewed the property, the taking of testimony was begun with a circuit judge presiding. Three witnesses testified regarding the necessity of the proposed public improvement. While the third witness was testifying, an attorney representing the owners of parcels numbered 31, 32, and 33 of the lands sought to be condemned, filed appearance, and upon his request the proceedings were adjourned until November 17th. On the adjourned date, in the presence of the court and jury, such attorney made the following statement and motion:

"Your honor, last Friday I filed an appearance in this matter in behalf of Emma Dahlinger, who is the owner of parcel 32 in this proceeding. * * * And also in behalf of parcels 31 and 33, which are owned by the Quirk Farms, and the Quirk Farms, Inc., are all owned by Mr. Henry Ford. Our objection * * * was to the taking over of this parcel 32, on which is erected quite an expensive home for Mrs. Dahlinger. * * * She is an elderly lady. She was connected with the Ford organization in its early days, and Mr. Ford helped her build this home, and I am informed that they put in close to, in landscaping and straightening out the land and everything, and the building itself, approximately $150,000 in that home. Now, that was our primary objection.

"I am satisfied that the petitioner here, the Huron-Clinton Authority, did not fully realize or appreciate the value of this parcel 32. That is, the extent of the money that was involved, and when that was called to their attention they agreed to withdraw parcel 32, and on that being done Mr. Ford had no further objection, and he agreed to deed to the Authority, providing, depending on the outcome of this proceeding, of course, * * * parcels 31 and 33 without cost.

"So, therefore I move at this time that parcels 31, 32 and 33 be withdrawn from this proceeding."

At this point the Authority's counsel stated that it was considered advisable to accept a donation of parcels 31 and 33 and to amend the petition by withdrawing parcels 31, 32, and 33, but that such matter would have to be acted upon by the board of commissioners of the Authority. Thereupon, several attorneys representing defendant land owners moved for dismissal of the entire proceedings, on the ground that it was invalidated by the withdrawal of said parcels. The hearing was then adjourned until November 19th.

On such adjourned date the Authority moved to amend its petition by withdrawing parcels 31 and 33, owned by the Quirk Farms Company, and parcel 32, owned by Emma Dahlinger, and also parcels 12, 72, 80, and 110, owned by the Detroit Edison Company. In support of such motion the Authority presented the following resolutions adopted by its board of commissioners on November 17th:

"Whereas, in the course of the trial of the condemnation case for property adjacent to Belleville lake the Quirk Farms Company has offered to donate parcels No. 31 and 33 under certain conditions, and

"Whereas, it appears that improvements have been made on that part of parcel No. 32, owned by Emma Dahlinger, which might make its acquisition in these proceedings unduly expensive.

"It is hereby resolved that the chairman be and is hereby authorized to accept the donation of parcels No. 31 and 33 and to authorize the withdrawal of that part of parcel No. 32 owned by Emma Dahlinger from the condemnation proceedings provided the terms of such donation and withdrawal are satisfactory to him, and

"Be it further resolved, that John P. O'Hara, attorney for the Huron-Clinton Metropolitan Authority, is hereby authorized on the instructions of the chairman to amend petition for condemnation and to take such other proceedings which are necessary to withdrawal from the condemnation proceedings of parcel No. 31, that part of parcel No. 32, owned by Emma Dahlinger and parcel 33."

"Whereas, in the course of the trial of the proceedings for the condemnation of land adjacent to Belleville lake an offer has been submitted by the Detroit Edison Company to sell to the Huron-Clinton Metropolitan Authority parcels No. 12, 80 and 110 at the price of $100 per acre, plus the cost of improvements on parcel No. 80, and to donate the right of access to Belleville lake on the northerly side thereof, in consideration of the withdrawal from such proceedings of parcel No. 72, and

"Whereas, parcel No. 72 has expensive buildings and already is and will continue to be used for recreational purposes.

"It is hereby resolved, that the chairman be and is hereby authorized to accept the offer of the Detroit Edison Company subject to his approval of the terms thereof, and

"Be it further resolved, that John P. O'Hara, attorney for the Huron-Clinton Metropolitan Authority, is hereby authorized on the instructions of the chairman to amend petition for condemnation

and to take such other proceedings which are necessary to withdrawal from the condemnation proceeding of parcels No. 12, 72, 80 and 110.''

The donation of parcels 31 and 33 by the Quirk Farms Company was to be by deed containing the following reverter provision:

''This deed is upon the condition subsequent that in case the Huron-Clinton Metropolitan Authority shall fail to acquire for its statutory purposes title to a majority of the acreage lying north of Belleville lake and south of Chase road in Wayne county, Michigan, within a period of three years from this date, or shall within a period of five years from date hereof fail to commence development for its statutory purposes of such property as it acquires then the title to the above-described property shall revert to and be reinvested in the grantor, its successors and assigns.''

The jury was excused during the extended arguments on the Authority's motion to amend its petition and on the motions of certain defendant land owners to dismiss the entire proceedings. In denying the Authority's motion to amend its petition and in granting the motions to dismiss, the court stated in part:

''We all agree that in what was done here there was no fraud. There was no bad faith, and there was no abuse of discretion. A question mark should be put under that last heading. But changing my mind back and forth, and back and forth, as the argument proceeded, * * * I go back time and time again during all of this argument to the proposition that * * * it just doesn't seem fair. * * *

''I think we can all agree that the Authority can purchase parcels and that the owner and the Authority can agree on the price; but I am still not satisfied that the Authority can accept as a gift one parcel,

or agree upon the price of one parcel if as a part of the same transaction another parcel is to be withdrawn, which after all, as counsel have stated, is really an agreement not to condemn. * * *

"And upon this same question of fairness * * * it strikes me that it is not fair to make the kind of agreement that was made here. I do not believe that it is fair to proceed after the witnesses have been on the stand and testified * * * as to necessity; and then the situation changed quite materially. * * * I am not satisfied that it would be fair for the property owners to proceed in this case, under those conditions."

In pursuance of such opinion, an order was entered November 25, 1942, denying the Authority's motion to amend its petition, and granting the motions to dismiss the entire proceedings. The Authority appeals from such order.

There appears to be no dispute over the material facts, which we shall summarize briefly. The Authority's petition described 110 privately-owned parcels of land which it proposed to condemn for public purposes. Henry Ford, through the Quirk Farms Company, owned parcels 31 and 33, and Emma Dahlinger, a former employee of the Ford organization, owned parcel 32, upon which extensive improvements had been made. During the course of the hearing the Quirk Farms Company offered to donate parcels 31 and 33 to the Authority if parcel 32 was withdrawn from the petition and proceedings. The commissioners of the Authority determined that the acquisition of parcel 32 would be unduly expensive and, by resolution, authorized the withdrawal of said parcel and the acceptance of a donation of parcels 31 and 33. The Detroit Edison Company, or its subsidiary, owned parcels 12, 72, 80, and 110. It also owned the riparian rights on Belle-

ville lake, which rights were not involved in the present suit. Parcels 72 and 80 had been improved and were used by the Edison Company as a park for its employees. During the course of the trial the company offered to sell parcels 12, 80, and 110 to the Authority at a price of $100 an acre plus the cost of improvements on parcel 80, and also offered to donate an easement and right of access to the water along the northerly side of the lake. Such offer was upon the condition that parcel 72 be withdrawn from the petition and proceedings. The Authority adopted a resolution authorizing the acceptance of the Edison Company's offer and the withdrawal of said four parcels. The Authority did not agree that parcel 32, retained by Mrs. Dahlinger, or parcel 72, retained by the Edison Company, would not be acquired or condemned at some later time.

The first question is whether or not the Authority was entitled to amend its petition by withdrawing the above-mentioned parcels of land from the present proceedings. Constitution 1908, art. 13, § 2, provides in substance that, when private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be paid therefor shall be ascertained by a jury or commissioners. 1 Comp. Laws 1929, § 3774 (Stat. Ann. § 8.22), relating to condemnation proceedings by public corporations, provides in part:

"*Amendments either in form or substance may be allowed in any paper, petition, process, record or proceedings* or in the description of the property proposed to be taken, or the name of any person whether contained in the resolution passed by the public corporation or State agency or otherwise, whenever the amendment will not interfere with the substantial rights of the parties. Any such amend-

ment may be made after as well as before judgment confirming the verdict of the jury.''

Under the above statute the Authority could amend its petition by withdrawing the parcels in question, if such amendment did not ''interfere with the substantial rights of the parties.'' The record is replete with argument but contains no substantial showing that the proposed amendment would be prejudicial to defendants or would deprive them of a fair and impartial determination of their rights.

1 Comp. Laws 1929, § 3780, as amended by Act No. 235, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3780, Stat. Ann. 1942 Cum. Supp. § 8.28), provides as follows:

''The petitioning corporation or State agency shall not have power to discontinue the proceedings under this act *after the confirmation of the verdict of the jury:* Provided, That in the case of the discontinuance of proceedings after a jury has been impaneled, the petitioning corporation or State agency, as the case may be, shall as a condition to the right to discontinue such proceedings pay the actual expenses and reasonable attorneys fees of all parties in interest who have appeared in said proceedings, under the order of the court.''

In the case of *In re Board of Education of City of Detroit,* 242 Mich. 658, a jury returned a verdict of necessity in condemnation proceedings and determined the amount of compensation to be paid for certain parcels of land proposed to be taken for a school site. Before confirmation of the jury's verdict, the board decided that the award of compensation for certain of the parcels was too high and moved to amend its petition and to discontinue the proceedings as to such parcels. In reversing the

trial court's denial of such motion, Mr. Justice Wiest said:

"That statute,* in providing that discontinuance may not be made *after* confirmation of the verdict is a clear recognition of the right to discontinue *before* confirmation of the verdict. The limitation in the statute relates to the time for the exercise of a right, and, until the limitation becomes operative by reason of the designated event, the right remains. This enables public agencies to safeguard the public interest by way of not being bound to accept property at a cost not warranted by public need."

In the present case the Authority's proposed amendment of its petition amounted to a discontinuance of the proceedings as to the parcels of land withdrawn. As stated in the above-quoted opinion, the statute providing for discontinuance "is a clear recognition of the right to discontinue *before* confirmation of the verdict." In Randolph on The Law of Eminent Domain, p. 322, § 354, it is stated:

"The petition may be amended not only in formal matters, but to rectify substantial errors and omissions. Thus, the petition may be amended by adding necessary parties, altering the location of the work, *reducing the quantity of land to be condemned,* altering the description of the property in question, and alleging that the work will be of public utility, and thereby taken out of the category of private uses."

Furthermore, the commissioners of the Authority were vested with broad discretion in determining what lands should be taken. As said in 4 McQuillin, Municipal Corporations (2d Ed.), p. 363, § 1586: "The condemnor is allowed a large discretion in

---

* 1 Comp. Laws 1929, § 3780 (Stat. Ann. § 8.28).—Reporter.

determining the quantity necessary and the exercise of this discretion will not be interfered with except in the case of abuse." See, also, *In re Widening of Fulton Street,* 248 Mich. 13 (64 A. L. R. 1507); *Panfil* v. *City of Detroit,* 246 Mich. 149; *City of Detroit* v. *Wayne Circuit Judge,* 79 Mich. 384; *Long* v. *Battle Creek,* 39 Mich. 323 (33 Am. Rep. 384); 2 Lewis on Eminent Domain (3d Ed.), p. 1068, § 604. In the good-faith exercise of their discretion the commissioners of the Authority determined that, because of extensive buildings and improvements thereon, parcels 32 and 72 were unduly expensive. The Authority properly protected the public interest from excessive expense by amending its petition so as to discontinue the proceedings as to such parcels. As there was no showing that the Authority agreed not to acquire or condemn said parcels 32 and 72 at some future time, it cannot be said that it wrongfully bartered away its right of eminent domain. The statute creating the Authority expressly authorized it to acquire private property by purchase, *gift,* devise or condemnation. There was no showing of fraud, bad faith or abuse of discretion on the part of the Authority in accepting the donation of certain parcels and also easement rights along the lake, and in purchasing other parcels. In the absence of such showing there was no justification for denial of the motion to amend.

We conclude that the Authority was entitled to amend its petition and thereby to discontinue the proceedings as to the parcels withdrawn.

The circuit judge dismissed the entire proceedings, apparently upon the ground that he believed the proposed amendment of the Authority's petition and the discourse before the jury, regarding the withdrawal of certain parcels and the acceptance of donations of other parcels, would result prejudi-

cially to the rights of defendant property owners. The petitioner questions the authority of the circuit judge to dismiss the proceedings. To determine the authority of the judge, we must ascertain the proper functions of the jury and the judge in such proceedings. The law has long been established in this State that in a condemnation case the jury are judges of both facts and law and that, after the impaneling of the jury, the presiding judge acts only in an advisory capacity. In *Chicago, D. & C. G. T. J. R. Co.* v. *Jacobs,* 225 Mich. 677, 685, we said:

"The jury in condemnation proceedings is a jury of inquest authorized to act as judges of the law and facts, *with the judge attending only in an advisory capacity.* At such inquest large discretion is given the jury in taking testimony and other particulars, which does not bind them to the strict rules of evidence and technicalities of trial in *nisi prius* courts."

"Condemnation proceedings are inquisitorial in their nature. The constitutional tribunal for the determination of the issues is the jury; the judge, after the jury is impaneled, acting in an advisory capacity." *In re Widening of South Dix Avenue,* 262 Mich. 233.

"Proceedings to condemn land are special and summary in character and, while subject to judicial review and supervision for certain purposes, are not judicial proceedings." *United States Gypsum Co.* v. *Kent Circuit Judge,* 150 Mich. 668, 673.

In the case of *In re Brewster Street Housing Site,* 291 Mich. 313, 343, we said:

"Proceedings for the condemnation of property are not tried before a court. The constitutional tribunal here involved was a jury of 12 freeholders residing in the vicinity of such property. * * *

Proceedings under this section of the Constitution (Const. 1908, art. 13, § 2), therefore, will not be reviewed in the same manner as if the proceeding were one tried before a court and jury according to the course of the common law. *Toledo, A. A. & G. T. R. Co.* v. *Dunlap,* 47 Mich. 456; *Fort Street Union Depot Co.* v. *Jones,* 83 Mich. 415; *Fort Street Union Depot Co.* v. *Backus,* 92 Mich. 33; *Michigan, O. & I. R. Co.* v. *Monroe Circuit Judge,* 144 Mich. 44; *United States Gypsum Co.* v. *Kent Circuit Judge,* 150 Mich. 668; *City of Detroit* v. *Fidelity Realty Co.* 213 Mich. 448; *Chicago, D. & C. G. T. J. R. Co.* v. *Jacobs,* 225 Mich. 677; *In re State Highway Commissioner,* 249 Mich. 530; *In re Widening of South Dix Avenue,* 262 Mich. 233."

"Appellate courts should not interfere unless the errors complained of are such as may fairly be said to have a controlling influence in securing the result." *Fort Street Union Depot Co.* v. *Jones,* 83 Mich. 415.

1 Comp. Laws 1929, § 3774, relating to condemnation proceedings, provides in part that "the verdict of the jury may be set aside by the court and a new trial ordered as in civil suits at law." Such statute does not authorize the judge to dismiss a condemnation proceedings, but only authorizes him to set aside the jury's verdict and grant a new trial. We find no statutory or other authority authorizing the judge presiding in a condemnation suit to dismiss the entire proceedings. In 20 C. J. p. 968, § 378, it is stated:

"A motion to dismiss is usually founded upon matter apparent on the face of the proceedings. It will lie where there are jurisdictional defects in the pleadings, but not for nonjurisdictional defects or defects which may be cured by amendment."

In the case of *In re Owen and Memorial Parks in City of Detroit*, 244 Mich. 377, 379 (61 A. L. R. 190), we said:

"In condemnation proceedings the trial judge has not the power of control over the proceedings and verdicts possessed by the trial judge in common-law actions. He may, of course, confirm or set aside the award reported to him, but he cannot give binding instructions, and the jury is the judge of both law and facts.  *  *  *  May the trial judge, under our constitutional provisions, if he reaches the conclusion that the award is excessive, himself reduce the award, and, as so reduced, confirm it, or should he refuse to confirm and award a *venire de novo*? We think the latter is the proper course under our Constitution. If the right there secured of a trial of both questions involved in condemnation proceedings by a jury is to be maintained, it must be maintained in its entirety; a jury may not settle one of the questions and the trial judge the other, if constitutional rights are to be observed."

In the case of *In re Widening of Bagley Avenue*, 248 Mich. 1, we stated:

"The proceedings are not according to the course of the common law—not in the nature of a lawsuit. The function of the judge is to set in motion the proceedings by organizing the jury and act in an advisory capacity during its deliberations.  *  *  *  They (the jury) are not to be interfered with or dictated to by the judge. The jury are judges both of the law and facts."

We conclude that the circuit judge presiding in the present condemnation suit did not have authority to dismiss the entire proceedings. If events occurred during the hearing which fatally affected the proceedings, the judge could either have dis-

charged the jury and ordered a new trial or, at the conclusion of the hearing, have set aside the jury's verdict and ordered a new trial.

There are other questions presented which require determination. In their brief defendants contend, in substance, that the offer of the Quirk Farms Company to donate parcels 31 and 33 was dependent upon the jury's determining the necessity of the proposed public improvement and that such conditional offer would prejudice the jury in their determination of the question of necessity. Such contention is without merit. The deed of parcels 31 and 33 from the Quirk Company provided that, if the Authority failed to acquire title to a majority of the acreage sought for park purposes within a period of three years, or if it failed to commence development of the property for park purposes within five years, the title to said parcels would revert to the Quirk company. This provision was entirely proper, as the company was entitled to protect itself against the Authority's retaining title to such parcels in case the proposed public improvement was not carried out.

Defendants further contend that, because "Henry Ford and the Detroit Edison Company are so well known and so prominent in the vicinity," testimony and statements regarding their donations of land would prejudice the jury in their determination of the questions of necessity and of the compensation to be awarded. There is no merit in such contention, as the Authority was legally entitled to acquire property by gift, and the prominence of the donor was immaterial.

One of the jurors was an employee of the Detroit Edison Company, and defendants claim that, because it developed during the proceedings that the Edison company was donating certain property, such juror was disqualified. Prior to the taking of

testimony, the juror had been carefully examined as to his qualifications by the trial court, and we find no basis for disqualifying him.

Defendants also contend, in substance, that testimony or statements regarding the donations of certain parcels of property to the Authority were inadmissible and rendered the entire proceedings void. Although under our decision in *Bay City Belt Line R. Co.* v. *Hitchcock,* 90 Mich. 533, such statements or testimony should have been excluded, their admission did not vitiate the entire proceedings. The trial judge might properly have instructed the jury that, in determining the questions of necessity and award, they should disregard any statements or testimony relative to donations of property.

We conclude that the Authority's motion to amend its petition should have been granted; and that defendants' motions to dismiss the entire proceedings should have been denied. The order entered November 25, 1942, denying the Authority's motion to amend its petition and dismissing the proceedings is vacated and set aside.

Because of the lapse of time and changed conditions, we believe the hearing should be *de novo* before a new jury. Accordingly, we direct that a new jury be impaneled and that the hearing be *de novo.* The case is remanded to the circuit court for further proceedings in accordance with this opinion.

Public questions being involved, no costs are allowed.

CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with STARR, J.

BOYLES, C. J. I concur, except in calling a new jury. When the circuit judge dismissed, without the right to do so, we should remand without calling a new jury.