22 N.J. Super. 415 (1952)
91 A.2d 896
ISADORE LENZNER AND FREDA LENZNER, PLAINTIFFS,
v.
CITY OF TRENTON, A MUNICIPAL CORPORATION OF NEW JERSEY, THE BOARD OF COMMISSIONERS OF THE CITY OF TRENTON, N.J., AND ALBERT G. HOWELL, ACTING CITY CLERK OF SAID CITY OF TRENTON, N.J., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 8, 1952.
*417 Mr. David Frankel for the plaintiffs (Mr. John A. Hartpence of counsel).
Mr. Louis Josephson for the defendants.
WOODS, J.S.C.
On May 29, 1952 the Board of Commissioners of the City of Trenton, New Jersey, adopted an ordinance providing for the acquisition of lands for the public parking of vehicles, which reads as follows:
"WHEREAS, the greatly increased use by the public of motor vehicles of all kinds has caused serious traffic congestion on the streets of the City of Trenton; that the parking of motor vehicles on the streets has contributed to this congestion to such an extent as to interfere seriously with the primary use of such streets for the movement of traffic; that such parking prevents the free circulation of traffic in, through and from other municipalities, impedes rapid and effective fighting of fires and the disposition of police forces and endangers the health, safety and welfare of the general public; that such parking threatens irreparable loss in valuations of property in *418 portions of the city which can no longer be readily reached by vehicular traffic; that this parking crisis, which threatens the welfare of the community can be reduced by providing sufficient `off-street' parking facilities properly located in the commercial and industrial areas of the city; that adequate provision of properly located terminal space for automobiles is a public responsibility and cannot be effectively dealt with by private enterprise; therefore the Board of Commissioners of the City of Trenton DO ORDAIN:
1. That pursuant to the provisions of chapter 138 of the Laws of 1942, R.S. 40:60-25.1, et seq., it is hereby determined that the City of Trenton shall acquire by purchase or condemnation the following described lands for the purpose of making the same available to the public for the public parking of vehicles.
2. That the cost of the said acquisition of said lands for such purpose, shall be raised by the issuance of bonds of the municipality in the manner provided by law.
3. The said lands are known as City Atlas Page 5, Lots No. 43-44-45-62-61-98-128-60-99, and part of Lots Nos. 63-46-135-47 and 48, more specifically described as follows:
(here follows the description of the lands by meets and bounds)
4. The City Counsel be and is hereby authorized and directed to negotiate with the owners for the purchase of said lands, and upon failure to arrive at a price satisfactory to the city to institute condemnation proceedings for the purpose of acquiring said lands in the manner provided by law."
Plaintiffs are the owners of Lots No. 43-44-45 and 62 on the City Atlas Page 5 referred to in said ordinance, and the plaintiff Isadore Lenzner also has a leasehold interest in certain other rear lands included and described in said ordinance. These lands are situate in the central business district of the City of Trenton and have been used, developed and operated by the plaintiff Isadore Lenzner as a profitable parking yard for automobiles, with the exception of a small portion thereof used for mercantile and dwelling purposes for a period of 24 years.
The plaintiffs bring this action to obtain a judgment declaring the ordinance to be illegal, invalid, null, void and without legislative or constitutional authority, and in contravention and in violation of the personal, legal and constitutional rights of the plaintiffs.
The defendants filed no answer but moved for a summary judgment on the ground that there is no genuine issue as *419 to any material fact, and stated that the ordinance was adopted pursuant to N.J.S.A. 40:60-25.1 and also N.J.S.A. 40:56-1.1.
N.J.S.A. 40:60-25.1 reads as follows:
"The governing body of any municipality may, by ordinance, provide for the acquisition by gift, devise, purchase or condemnation, of lands therein for the purpose of making the same available to the public for the public parking of vehicles and the cost of the acquisition of any land for such purpose may be raised by general taxation, or by the issuance of bonds of the municipality. Such lands may consist of separate tracts or parcels, contiguous or not contiguous, improved or unimproved, and whether or not abutting upon any State or county road or municipal street." L. 1942, c. 138, p. 427, sec. 1.
N.J.S.A. 40:56-1.1 reads as follows:
"Any municipality may undertake, as a local improvement, the work of providing facilities for the parking of motor vehicles by the acquisition and improvement of real property and by the construction of buildings and structures. Any such acquisition may be by purchase or lease and the parking facilities may include equipment, entrances, exits, fencing and other accessories necessary or desirable for the safety and convenience of the parking of motor vehicles." L. 1949, c. 261, p. 828, sec. 1.
The plaintiffs then moved for entry of default judgment for the reason that since no answer was filed, the defendant admitted all allegations of the complaint.
We have heard the oral argument of counsel and we have read the pleadings and the voluminous briefs filed in behalf of both the plaintiffs and the defendants. After analyzing all the facts and the law set forth, we determine the questions before the court at this time to be:
1. Is the ordinance adopted pursuant to N.J.S.A. 40:60-25.1, (L. 1942, c. 138) valid legislation, sufficient to authorize the defendants to proceed thereunder?
2. Is the ordinance in contravention and in violation of the personal, legal and constitutional rights of the plaintiffs?
3. Are the plaintiffs entitled to a default judgment because the defendants failed to file an answer and therefore *420 all the material averments and allegations of the complaint which have not been specifically denied by the defendants are admitted?
As to the first question, the plaintiffs allege that the ordinance states specifically that it is based upon Chapter 138 of the Laws of 1942 (N.J.S.A. 40:60-25.1 et seq) and that its validity therefore must rest entirely upon that statute. With this allegation we agree. However, they go on to argue that the City of Trenton, once having created a parking authority pursuant to N.J.S.A. 40:11A-1 et seq. (L. 1948, c. 198) by its ordinance adopted on December 16, 1948, thereby divested itself of the right and power which it might otherwise have had in all the rights and powers now vested by law in the said Parking Authority of the City of Trenton and is without power or legal authority now to take the action which it has attempted to take by the passage and adoption of the ordinance in question.
In an opinion by the Supreme Court of New Jersey written by Judge Jacobs in the case of DeLorenzo v. City of Hackensack, 9 N.J. 379 (1952), at page 384 the court held as follows:
"The parking problem confronting urban municipalities in New Jersey and elsewhere is a serious one. See Giant Tiger Corporation v. Board of Commissioners of Trenton, 11 N.J. Misc. 836, 839 (Sup. Ct. 1933); England v. Milburn Township, 122 N.J.L. 462, 465 (E. & A. 1939). It is being dealt with in many communities by public off-street parking facilities operated often-times by the municipalities themselves or by so-called parking authorities created pursuant to enabling legislation." (Emphasis ours)
The court then reviewed the existing legislation dealing with the laws authorizing the municipality to operate offstreet parking lots. We quote:
"In L. 1942, c. 138, the Legislature authorized municipalities to acquire and operate parking facilities and defray the cost thereof by general taxation. R.S. 40:60-25.1, et seq. In L. 1949, c. 261, the Legislature authorized municipalities to undertake, as local improvements the work of providing parking facilities. R.S. 40:56-1.1, *421 et seq. Under these enactments taxpayers generally or those specially benefitted would bear the financial burden, and the City of Hackensack chose not to proceed thereunder. (Emphasis ours). In L. 1948, c. 198, the Legislature sought to afford to municipalities the means of providing public off-street parking facilities through independent authorities which would be substantially self-liquidating, thus restricting or eliminating the financial burdens on their taxpayers."
We agree with the defendants that it is entirely reasonable and conceivable that the municipality would employ each of these methods over a period of time, and this would seem to be the legislative intent, inasmuch as each of the three statutes referred to differ substantially, although all provide for parking facilities to be operated by a municipality or a corporation created by it. This ordinance is a valid exercise of the legislative rights delegated to the municipalities by the State pursuant to N.J.S.A. 40:60-25.1 and a reading of this act and the other statutory provisions and cases referred to clearly indicate that all of the said enactments are in full force and effect, and that the choice of which Act to proceed under is up to the governing body of the municipality.
The second question to be determined is raised by the averment of the plaintiffs that it is the intention of the Board of Commissioners of the City of Trenton, New Jersey, by means of the ordinance aforesaid, to take and acquire the lands and property of the plaintiff Isadore Lenzner, without making just compensation therefor, and further that it would permit the taking of private property of the plaintiffs for a private use and for the benefit of a limited group of private interests.
The right of eminent domain is an inseparable attribute of sovereignty, and an inherent power founded in the primary duty of government to serve the common need and advance the general welfare, and its exercise is essentially a legislative and not a judicial function. Sinnickson v. Johnson, 17 N.J.L. 145 (Sup. Ct. 1839); State Highway Com. v. City of Elizabeth, 140 A. 335 (Ch. 1928); Bergen County Sewer Authority v. Borough of Little Ferry, 5 N.J. 548 (1950).
*422 The opinion in the case of Scudder v. The Trenton Delaware Falls Co., 1 N.J. Eq. 694 (Ch. 1832) was written by the Chancellor and we quote (p. 726):
"The right of taking private property for public use was originally founded on State necessity. In process of time the right has been more liberally construed. The term public use has been substituted; and what shall be considered as public use, is, under the decisions of our courts, an unsettled question. * * * It has been seen that turnpike roads or canals are considered of a public nature, so far as to authorize the taking of private property for their construction. Railroads have lately been added to this class of public improvements. * * * May we not, in considering what shall be deemed a public use and benefit, look at the objects, the purposes, and the results of the undertaking? * * * The ever varying conditions of society is constantly presenting new objects of public importance and utility; and what shall be considered a public use or benefit, may depend somewhat on the situation and wants of the community for the time being. * * * The great principle remains. There must be a public use or benefit; that is undisputable, but what they shall consist of, or how extensive it shall be to authorize an appropriation of private property, is not easily reducible to general rule." (Emphasis ours.)
The right of individuals in the ownership of property must, of necessity, bend to the requirements of public use through the exercise of the right of eminent domain. Private ownership of property must give way to a definite public need or to a desire to subject that property to a public use. The court must take judicial notice of the fact that the constantly increasing use of motor vehicles by the public has caused and will in the future cause serious traffic congestion and that the parking of motor vehicles on the streets greatly contributes to this congestion and to the resultant effects thereof which of necessity endanger the health, safety and welfare of the general public. In looking at the objects, purposes and results contemplated by this ordinance, we must deem the proposed taking of this private property for a public use necessary and proper, legal and constitutional. We can readily apply the reasoning of Chief Justice Beasley set forth in the case of Tide-Water Co. v. Coster, 18 N.J. Eq. 518, 90 Am. Dec. 634 (E. & A. 1866) to the facts before *423 us. He said: "It is the resulting general utility which gives such enterprises a kind of public aspect, and invests them with privileges which do not belong to mere private interests." "The only limitation upon the power to take in such cases is the necessity of affording just compensation for the property taken." Romano v. Housing Authority of the City of Newark, 123 N.J.L. 428, 10 A.2d 181 (Sup. Ct. 1939). This has been provided for in the ordinance on which this case is brought. The ordinance must be interpreted that it is the intention of the governing body, if negotiations for purchase fail, to follow the principles of eminent domain, and to have in mind that when the land is taken the owners are entitled to recover for all damages, present and prospective, which may be known or reasonably be expected to result from the improvement, whether they be the income from the buildings used for mercantile and dwelling purposes or the private parking lot business of the plaintiff Isadore Lenzner. We conclude that this ordinance is not in contravention and violation of the personal, legal and constitutional rights of the plaintiffs.
Having reached the conclusions set forth above, we must grant the motion of the defendants for a summary judgment in their behalf on the grounds that there is no genuine issue as to any material fact challenged. Rule 3:56-3.
There is one further point to be determined. The plaintiffs have moved for the entry of a default judgment on the grounds that the defendants have failed to file an answer and therefore all the material averments and allegations of the complaint which have not been specifically denied by the defendants are admitted.
Rule 3:56-2:
"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment or order in his favor as to all or any part thereof."
There have been no reported decisions concerning the point of moving for a summary judgment before answer filed in *424 our courts. Therefore, we must look to the source of this rule, which we find to be Federal Rule 56(b), we quote:
"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."
There have been several interpretations of this federal rule in the reported decisions. In the case of Gifford v. Travelers Protective Ass'n. of America, 153 F.2d 209, C.C.A. Cal. 1946, the court held that the defendant's motion for summary judgment was not premature because made before defendant filed an answer. Also see Lindsey v. Leavy, 149 F.2d 899, C.C.A. Wash. 1945, and Security Trust Co. of Rochester, N.Y. v. Woodward, 73 F. Supp. 667, D.C.N.Y. 1947, where the court held that a motion for summary judgment under this rule may be made before answer, particularly where the only question involved is one of law. Where no answer had been filed, motion by defendant for summary judgment could be considered either as a motion to dismiss the complaint or as a motion for summary judgment. Creedon v. Bowman, 75 F. Supp. 265 (D.C. Pa. 1948).
Since the language of both rules is the same and because the interpretation by the federal courts is logical and reasonable, we conclude that a motion for summary judgment by a defendant may be made before filing an answer.
The motion of the plaintiffs for entry of a default judgment in favor of the plaintiffs is denied.