## Staunton

### Fannie Tiller, Et Al. v. Norfolk and Western Railway Company.

September 3, 1959.

Record No. 4952.

Present, All the Justices.

The opinion states the case.

S. H. Sutherland (S. H. & George C. Sutherland, on brief), for the appellants.

M. M. Long and Fred B. Greear, for the appellee.

I'Anson, J., delivered the opinion of the court.

This is a condemnation suit instituted by the Norfolk and Western Railway Company against Fannie Tiller, Maxie T. Mullins, Tollie E. Mullins, Rachel Barton, Ira Barton, Hattie Ashworth, Eugene Ashworth, Graham A. Tiller, Janie Ruth Tiller, J. Bernard Tiller, Mona Tiller, Elaine T. Duty and Dewey Duty, all heirs at law of Eivens Tiller, hereinafter referred to as the defendants, to take certain lands owned by the defendants and a section of a secondary State highway in Dickenson county, Virginia, for the purpose of constructing a railroad spur line up Tiller Fork and relocating the section of the secondary State highway. A motion to quash the railway company's petition was overruled and commissioners were appointed to ascertain and fix the value of the defendants' lands to be taken and to award damages, if any, to the residue. From a decree confirming the report of the commissioners we granted this appeal.

The principal assignments of error to which we need direct our attention are as follows: The court erred

(1) In appointing commissioners, because the evidence was insufficient to show that a bona fide effort had been made by the railway company to purchase defendants' lands proposed to be condemned;

(2) In permitting the railway company to condemn approximately 1,250 feet of a longitudinal section of a public highway, when the highway department was not a party to the proceedings, and land

of the defendants which was not for the use of the railroad but for the purpose of relocating that portion of the highway taken;

(3) In permitting the railway company to condemn land for a spur line;

(4) In presiding while the commissioners were hearing evidence and directing them not to consider certain admissible evidence;

(5) In granting and refusing instructions; and

(6) In refusing to set aside the report of the commissioners because the amount fixed by them as to the value of the land taken and the damages to the residue was wholly inadequate.

The evidence shows that the terrain on Tiller Fork is steep and rugged, with very little land in the hollow. Because of the narrowness of the valley it was necessary to construct a part of the railroad spur track on a section of secondary State highway 601 and to condemn a strip of land of the defendants wide enough to relocate the highway and change the channel of a creek. The proposed spur track would serve a public need and would be for public use. The cost of building the spur track on the hillside would be prohibitive. The defendants raised no objection to the taking of land to change the channel of the creek.

An agreement between the State Highway Department and the railway company provided that the railway company would acquire land for the relocation of a section of the highway and construct the new highway section at its own expense as substitute compensation for 1,250 feet of the highway right of way on which the railway company would construct a portion of its spur track.

The amount of defendants' land taken in this suit was 9.84 acres, for which they were awarded $10,000.00, plus $2,500.00 for damages to the residue, a total of $12,500.00.

The defendants contend in their first assignment of error that the land agent of the railway company sought only an option to purchase the land needed for construction of the spur track and that the agent did not make a bona fide effort to purchase the land in accordance with the requirement of § 25-7,[1] Code of 1950, before the institution of this suit.

---

[1] "25-7.—No proceeding shall be taken to condemn land or other property, nor any interest therein, until a bona fide, but ineffectual, effort has been made to acquire the same from the owner thereof by purchase, except where such consent cannot be obtained because of the incapacity of the owners or one or more of them, or because such owner is unknown or cannot with reasonable diligence be found within this State."

The trial judge heard evidence on this point before the appointment of the commissioners and held that the railway company had made a bona fide, but ineffectual, effort to purchase the land before the institution of this suit. The evidence supports his finding.

The evidence shows that the agent of the railway company offered the defendants $5,300.00 for the land and buildings to be taken and the damages to the residue. The offer was refused by the defendants and there was every indication from the evidence that it was impossible for the parties to agree on a price for the property.

The manner in which the trade or settlement between the parties might have been consummated was not considered by either one of the bargaining parties because they never got that far along in their negotiations.

Where a statutory provision requires that no proceeding shall be instituted to condemn property until a bona fide, but ineffectual, attempt has been made to purchase, the general rule is that the attempt is sufficient if negotiations proceed far enough to indicate an impossibility of agreement. *Chicago D & C Grand Trunk Junction R. Co.* v. *Jacobs*, 225 Mich. 677, 196 N. W. 621, 622; *Chicago & W. I. R. R. Co.* v. *Heidenreich*, 254 Ill. 231, 98 N. E. 567, 570, Ann. Cas. 1913 C, 266; 29 C. J. S., Eminent Domain, § 224 b, pp. 1167-69; 6 Nichols on Eminent Domain, 3 ed., § 24.621, pp. 58, 61. See also *Stanpark Realty Corporation* v. *City of Norfolk*, 199 Va. 716, 723, 101 S. E. 2d 527, 532, 533.

The defendants next contend that there is no statutory authority giving the court jurisdiction to entertain the railway company's petition because a part of the land it is seeking to condemn is not for the railway company's public use, and that there is no statutory authority permitting the railway company to condemn a section of a public highway, particularly when the State Highway Department is not a party to this suit.

The defendants also say that the railway company is prevented from taking a section of the public highway under the provisions of § 25-233, Code of 1950, which reads as follows:

"No corporation shall take by condemnation proceedings any property belonging to any other corporation possessing the power of eminent domain, unless, after hearing all parties in interest, the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require, and shall give its permission thereto; and in no event shall one corporation take by

condemnation proceedings any property owned by and essential to the purposes of another corporation possessing the power of eminent domain."

The statute has no application to this proceeding. *Two corporations* possessing the power of eminent domain are not involved here.

■ The railway company concedes that there are no statutes in Virginia which *expressly* give it the right to condemn a section of the public highway and a strip of defendants' lands wide enough to relocate the creek and the section of the highway. It contends, however, that § 56-347,[2] Code of 1950, as amended, 1958 Cum. Supp., Acts of Assembly, 1956, c. 435, p. 618, which is the general statute granting railway companies the power of eminent domain, lists various grounds for condemnation of property and that the language "or for other necessary railroad purposes" is sufficiently broad to give it this right.

The question before us is one of first impression in this State, and the railway company relies on the decisions of courts from other jurisdictions dealing with somewhat similar problems in support of its position.

The principle is well established that under certain extraordinary conditions where the conventional method of compensating an owner of land that has been taken for a public use in eminent domain proceedings by paying him the value thereof is completely inadequate, and the owner can be adequately compensated only by exchanging other adjacent land for the property taken, the acquisition of the substitute lands in eminent domain proceedings to be exchanged for the lands taken is a taking for public use. *Dohany* v. *Rogers, Commissioner,* 281 U. S. 362, 50 S. Ct. 299, 74 L. ed. 904, 68 A. L. R.

---

[2] "56-347.—In the event that any corporation of this State organized to conduct a railroad business cannot, because of the incapacity of the owner, or inability to agree upon the price or terms, or because the owner cannot, with reasonable diligence, be found in this State, or is unknown, agree on terms of purchase with those entitled to any land, sand, earth, gravel, water or other material necessary to be taken and used in the construction, maintenance, operation or improvement of such railroad, or in the straightening of its line or change of its location, or in constructing or providing depots, stations, shops, yards, terminals, or additional tracks or facilities, *or for other necessary railroad purposes,* it may proceed for the condemnation thereof in the manner and under the restrictions prescribed by the general statute of this State relative to the condemnation of lands; but such corporation shall not take by condemnation proceedings a strip of land for its right of way wider than one hundred feet, except at places where more land is required for slopes, ditches, cuts, tunnels, embankments, or for the improvement or straightening of its line, or change of location, or for drainage, or for depositing waste material." (Italics supplied.)

434; *Pitznogle* v. *Western Maryland R. Co.*, 119 Md. 673, 87 A. 917, 46 L. R. A., N. S. 319; *Feltz* v. *Central Nebraska Public Power & Irrigation District*, 8 Cir., 124 F. 2d 578; *Langenau Mfg. Co.* v. *City of Cleveland, Cleveland Transit System*, 159 Ohio St. 525, 112 N. E. 2d 658; *Brown* v. *United States*, 263 U. S. 78, 81, 82, 83, 44 S. Ct. 92, 68 L. ed. 171; 18 Am. Jur., Eminent Domain, § 80, p. 711; Anno., 68 A. L. R., p. 442; 2 Nichols on Eminent Domain, 3 ed., § 7.226, pp. 457, 458, 459, 1959 Cum. Supp., pp. 76, 77, and cases there cited.

In *Dohany* v. *Rogers, Commissioner, supra*, the State Highway Commissioner of Michigan instituted condemnation proceedings to acquire land for widening a public highway under a statute which provided that whenever it was necessary to acquire a railroad right of way for widening a state highway, he [the commissioner] was authorized to acquire land by condemnation and exchange it for such right of way. The widening of the highway necessitated the taking of an adjacent railroad right of way extending for several miles and the commissioner undertook to acquire additional land in the condemnation proceedings upon which to relocate the railroad right of way, after having first entered into a contract with the railroad company for the exchange. The land owner contended that the taking of his land for the purpose of exchange with the railroad company was for a private and not a public purpose and that such a taking by condemnation under the highway act deprived him of the advantages afforded under the railway condemnation statutes. The court held that the taking of the excess land for the purpose of relocating the railroad's right of way was for a public purpose and within the power of eminent domain. In its opinion the court said (281 U. S. at p. 366):

"We need not inquire whether, under the peculiar provisions of the Michigan statutes, the proposed taking of appellant's land was for a highway or railway purposes. It is enough that, although the land is to be used as a right of way for a railroad, its acquisition is so essentially a part of the project for improving a public highway as to be for a public use."

In *Pitznogle* v. *Western Maryland R. Co., supra*, the railroad company condemned a parcel of land for its shops and tracks. Included in the land taken was a private driveway, which was the only means of access by certain land owners to the public highway. In sustaining the right of the railroad company to condemn additional land to

provide these owners a substitute right of way the court said (87 A. at pp. 919, 920):

"The condemnation of a part of this land here sought to be condemned for a substitute private road or way is incident to and results from the taking by reasons of public necessity of the existing private road for public use, and the use of it for such purposes should, we think, be regarded as a public use within the meaning of the Constitution."

In the case of *Feltz* v. *Central Nebraska Public Power & Irrigation District, supra,* the Public Power & Irrigation District of Nebraska brought proceedings to condemn certain lands for the purpose of constructing a dam and an on-river reservoir. A section of U. S. public highway was located on the proposed site and the irrigation district entered into an agreement with the highway department to acquire a new right of way for the relocation and construction of the highway. The land sought to be condemned was not in the area of the dam or reservoir to be constructed and the land owners contended that the court had no jurisdiction to take their lands as they were to be used for the relocated highway.

After stating that there were no express words in the statute relating to the removal of such utilities as railroads and streets that lie within the project area, the court said (124 F. 2d at p. 582): "It must be conceded that there are situations in which an attempted taking of land may be too remote from the scope of an authorized improvement to be sustained. But in this case we think it resulted from the public interests involved and the maintenance of the public highway as a part of the highway system of the United States and the public interest in the development of the power and irrigation improvement that the work of highway relocation aided and contributed in a secondary way and was 'accessory' and 'in conjunction with' the District's improvement and the District's power to condemn must be sustained under the decisions of the Supreme Court in *Brown* v. *United States, supra,* where *Pitznogle* v. *Western Maryland R. Co., supra,* was cited with approval."

In the case of *Langenau Mfg. Co.* v. *City of Cleveland, Cleveland Transit System, supra,* Langenau sought an injunction against the City of Cleveland and Cleveland Transit System to restrain the city from appropriating its property for exchange with a railroad company for the purpose of relocating the tracks of the railroad company and the transit system. Under an agreement between the transit

system and the railroad company, the right of way and tracks of the transit system would be physically located and established on the existing right of way of the railroad company. The relocated tracks and right of way of the railroad company would be over Langenau's property. Langenau contended that the appropriation was for a non-public use and in violation of the statutes, the city charter, and the Fourteenth Amendment, because under the agreement between the transit company and the railroad company the relocated tracks of the railroad company would be on his property. The court, in denying the injunction, said (112 N. E. 2d at p. 662):

"If the city of Cleveland does not have authority to appropriate the land upon which the Nickel Plate tracks are to be relocated, the railroad has the power to do so. Municipal corporations are given authority to appropriate by Section 19, Article 1, of the Ohio Constitution, and railroads are given authority to condemn for right of way purposes by Section 5, Article XIII. The rule for compensation is exactly the same in either case. * * * Langenau is not, therefore, prejudiced because condemnation is being made by the city. The relocation of the Nickel Plate right of way is in itself for a public use by a quasi-public corporation having authority in its own right to exercise the power of eminent domain. Under the circumstances presented in the instant case, Section 3677, General Code, is sufficiently broad to permit the city to acquire lands for its bona fide construction purposes and as an incident thereto to acquire land necessary to relocate the railroad right of way being taken for rapid transit purposes. See *Fitzsimons & Galvin, Inc.* v. *Rogers*," 243 Mich. 649, 220 N. W. 881.

Even if there is no express statutory authority empowering the railway company to condemn the defendants' lands for the purpose of relocating the creek and a section of the highway, the State Highway Department could have condemned the land needed under § 33-52, Code of 1950. But it would have served no useful purpose to require the State Highway Department to incur the expense of condemnation under the circumstances because there are no special advantages accruing to the defendants by condemnation under the highway act over condemnation by railroads. The procedure followed was a comon sense adjustment of the problem facing the railway company and defendants have not been prejudiced.

The relocated section of the highway, with title in the State, inures to the public benefit and public use as well.

The taking of a section of the highway was necessary for the construction of the railroad spur track for public use. This was done with the permission and consent of the State Highway Department.

The State Highway Commission is given broad powers in discontinuing and abandoning secondary roads and exchanging discontinued and abandoned roads for lands that may be necessary for the uses of the secondary highway system. Sec. 33-76.7, Code of 1950, and § 33-76.11, Code of 1950, as amended, Cum. Supp. 1958, Acts of Assembly, 1956, c. 106, p. 109.

The State Highway Department was not a necessary party to this proceeding because of the agreement between it [the State Highway Department] and the railway company. The defendants have not been prejudiced and they have no reason to complain.

For the reasons expressed, we are of opinion that the taking, with the permission of the State Highway Department, of a section of secondary highway 601 upon which the railway company can construct a portion of its spur track, and the taking of the defendants' lands to relocate the section of the highway and creek, was in the public interest, incidental to and implied from the broad powers of eminent domain given the railway company under § 56-347, Code of 1950, as amended, and that the procedure followed by the railway company is supported by the weight of authority.

Compare *State* v. *District Court*, 126 Mont. 183, 248 P. 2d 215.

The defendants next contend that the railway company had no authority to condemn land for a spur track. This contention is without merit.

Before the institution of this suit the defendants sought an injunction in the Circuit Court of Dickenson county to prevent the condemnation of their lands on the grounds that the railway company had no authority to construct the proposed spur track and that the land proposed to be taken was not to be used for railroad purposes. The injunction was refused and in denying an appeal we held that the decree of the lower court was plainly right. *Tiller* v. *Norfolk and Western Ry. Co.*, (January 17, 1958) 199 Va. lxxxi.

The defendants next contend that it was error for the trial judge to preside and pass on the evidence at the hearing of the evidence by the commissioners. The defendants argue that § 33-64, Code of 1950, as amended, 1958 Cum. Supp., Acts of Assembly, 1956, c. 580, p. 938, which deals with condemnation suits instituted by

the State Highway Commissioner, expressly directs the court to preside at the taking of evidence when one of the parties to the proceedings requests the judge to accompany the commissioners in making their view, and since § 25-12, Code of 1950, which provides for the appointment of commissioners under the general condemnation statutes, is silent on the right of the judge to preside an inference is created that the judge has no right to preside in this suit. No such inference can be drawn and the contention is without merit. This proceeding is before the court which, under the statutes, has power over the commissioners until their report is filed. It has long been the practice of many of the trial judges to preside over the taking of evidence before the commissioners. We approve such practice.

The defendants contend that they were not permitted to offer evidence on the value of the stripping rights and oil and gas. The evidence shows that the coal was owned by the Pittston Company, successor to the Clinchfield Coal Company, with broad mining rights, consequently the stripping rights were of no value to the defendants. They offered no evidence that there was any oil or gas on the property taken. The rulings of the court on the admissibility of other evidence were also proper.

The instructions given by the court, after the commissioners viewed the property and heard the evidence, fully and correctly informed them of their duties in this proceeding and we find no error in the court's refusal to grant certain instructions offered by the defendants.

In the next assignment of error the defendants contend that the award was shockingly small. This contention is without merit.

The finding of the commissioners is entitled to great weight and cannot be disturbed by us in the absence of clear proof that their finding was based on erroneous principles or so grossly inadequate or excessive as to show prejudice or corruption. *Virginia Electric and Power Co. v. Pickett*, 197 Va. 269, 275, 89 S. E. 2d 76, 80.

There is nothing in the record which indicates that the award was based on erroneous principles or so grossly inadequate as to show prejudice or corruption. The commissioners viewed the property and their finding is supported by the evidence.

We have examined the many other assignments of error and find them to be without merit.

For the reasons given, the decree of the trial court is

*Affirmed.*