## CIRCUIT COURT OF THE CITY OF RICHMOND

Edward S. Carl
and Norma B. Carl

v.

City of Richmond

September 25, 1987

Case No. N-4975-4

## By JUDGE ROBERT W. DULING

This matter is before the Court pursuant to the Petitioners' Bill of Complaint for Declaratory Judgment and Injunction wherein the Petitioners challenge the constitutionality of Chapter 230 of the Acts of the General Assembly of 1987 which amended the Charter for the City of Richmond by adding to Section 2.03 ("Power Relating to Public Works, Utilities and Properties") a new subsection as follows:

> (p) to construct, own, maintain, operate and equip a visitors center and incidental parking, playgrounds and facilities.

Chapter 230 also makes other amendments to the City charter which are not relevant here.

Prior to the passage of Chapter 230, the City had passed Ordinance No. 86-209-200 which declared that a public necessity existed for the acquisition of seventy-five

parcels of land for the purpose of a Visitor Orientation Center.

Pursuant to the authority conferred by Chapter 230, the City Manager of Richmond presented the City Council with proposed Ordinance No. 87-122 on May 11, 1987, for the purpose of directing the City Attorney to bring condemnation proceedings for the acquisition of twelve parcels of land in the blocks bounded by Third, Fifth and Jackson Streets and Interstate 95. Among the properties to be acquired by condemnation are certain parcels belonging to the petitioners.

On May 26, 1987, an amendment was offered which increased the aggregate amount of estimated compensation necessary to complete the acquisition and increasing the amounts of estimated compensation with respect to the Petitioners' properties and the property of two other owners. Ordinance No. 87-122, as amended, thereafter came before and was approved by the City Council on June 8, 1987. Petitioners filed their Bill of Complaint on the same day alleging that the Chapter 230 amendment and 87-122 were unconstitutional.

On July 29 and July 30, 1987, this Court held an expedited hearing on this matter.

The Petitioners own a number of lots which comprise approximately 1.12 acres of land situated within the area targeted by Ordinance No. 87-122 for acquisition by the City for a Visitor Orientation Center. The property is currently devoted to monthly parking.

On or about May 18, 1987, the City issued its "Request for Design-Build Proposal: New Visitor Orientation Center" ("RFP"). The RFP outlines in some detail the "programatic and thematic content for a proposed Visitor Orientation Center in Richmond" and provides a detailed analysis of the project which describes the site, proposed facilities and uses, proposal requirements, and the specifications, criteria and other requirements of the design-build project. The RFP indicates the project will include facilities for information, exhibits and parking. The RFP also suggests that the project include a gasoline station to be leased to a private company, a gift shop to be managed by an independent concession company, and facilities to make hotel, restaurant, theater and other event reservations for visitors, and to sell tickets to visitors for tours,

amusement parks, area attractions and other unspecified events.

The Court must first consider whether the condemnation of Petitioners' property as authorized by Chapter 230 of the Acts of Assembly of 1987 and Ordinance No. 87-122 of the City of Richmond is for a public use.

According to the Fifth Amendment to the Constitution of the United States, private property shall not be taken for a public use without just compensation. Article I, Section 11, of the Constitution of Virginia provides that "the General Assembly shall not pass any law whereby private property shall be taken for public uses without just compensation. . . ." Virginia Code Section 15.1-276 defines "public uses" as "embrac(ing) all uses which are necessary for public purposes."

Whether a particular use is public is a question for the judiciary and not for the Legislature. *City of Richmond v. Carneal*, 190 Va. 398, 106 S.E. 403, 406 (1921); *Boyd v. Ritter Lumber Co.*, 119 Va. 348, 89 S.E. 273 (1916). The Legislature cannot make a private use public by calling it so, in order to justify the exercise of the power of eminent domain. *Id.* The Legislature cannot determine the constitutionality of one of its own enactments. *Id.* at 405. Thus, the one and only principle in which all courts seem to agree is that the nature of the uses, whether public or private is ultimately a judicial question. *Hairston v. Danville & Western Railway Co.*, 208 U.S. 606 (1908).

The City argues that, because it has declared the necessity for the Visitor Orientation Center project, the issue is foreclosed pursuant to Section 15.1-237 of the Virginia Code. *See* Pre-Trial Brief of The City of Richmond, page 20. Section 15.1-237 permits the governing body to declare by resolution that a necessity for condemnation exists. According to the City's interpretation of this statute, the legislative body, rather than the judiciary, is responsible for defining the public need and whether a public purpose is served by a particular project. The judiciary, according to the City, would step in to determine whether a public or private need was being served, only when the governing body failed to make such a declaration.

The City's interpretation of Section 15.1-237 limits the traditional role of the Court in eminent domain cases.

A recent law review article surveying the role of courts in such cases states:

> In the past, state courts have occasionally invalidated takings which their legislators sought to accomplish. The courts presumably acted in the belief that their role in a three-part government of checks and balances was to guard the fundamental right of citizens as established by the (United States) Constitution and to provide a brake, when necessary, on the natural tendency of government to overreach, thus keeping a rough equilibrium between the power of government to regulate for the common good and the right of individuals to be secure in their persons and property from the unwarranted intrusion of government or other individuals. Comment, *Tax Increment Financing For Redevelopment in Missouri: Beauty and The Beast*, 54 UMKC L. Rev. 77, 95 (1985).

The purpose of this system of checks and balances would be thwarted if the city were to be allowed to first declare a public need and then satisfy the constitutional requirement of public use and purpose by its own declaration. The better interpretation of Virginia Code 15.1-237 permits the City merely to make the political determination of whether a particular site is more proper for condemnation than another site, or whether condemnation is more appropriate under the facts of a case than rezoning. The question as to the degree or quantity of interest to be taken, like other political questions, is exclusively for the legislature. *Roanoke City v. Berkowitz*, 80 Va. 616 (1885). These political questions cover issues such as whether condemnation of an entire fee simple is more appropriate than acquisition of a mere easement, *U. S. v. Certain Parcels of Lane in Fairfax, Virginia*, 89 F. Supp. 567 (E.D. Va. 1950), and whether rezoning is more appropriate than condemnation. *Hunter v. Norfolk Redevelopment & Housing Authority*, 195 Va. 326, 78 S.E.2d 893, 900 (1953).

Section 15.1-237 extends the legislative function to the judiciary. *See Stanpark Realty Corp. v. City of Norfolk*, 199 Va. 716, 101 S.E.2d 527, 531 (1958). By

amendment, the General Assembly has allowed the City to preempt Court action on these issues. It does not expand the legislative role to encompass a judiciary function.

Thus, the court upon proper motion must still determine whether the taking for the proposed Visitor Orientation Center is indeed predominantly for a public use.

It is clear that a visitor "information center" which provides travel information and restroom facilities meets a public need. What is not clear from the evidence is whether all elements of the proposed project are necessary for a public purpose.

The Supreme Court of Virginia addressed a similar set of facts in *City of Richmond v. Carneal*, 129 Va. 388, 106 S.E. 403 (1921). A statute allowing the opening and widening of streets was at issue in *Carneal*. The Court, in holding the statute unconstitutional, found that the City had taken more land than needed for the street itself; therefore, it was not a taking for a public use. The Court stated:

> The opening of a public street is recognized everywhere as a public use and the taking is not resisted as to so much of the land as is needed for the street. It is resisted only as to what is termed "excess condemnation." *Id.* at 405.

The Court, in disallowing the condemnation, found it significant that "no reason is assigned for the excess condemnation" except that the City Council is of the opinion 'that not to acquire all, or parts of the property on certain blocks, squares, or lots, through which the said proposed street will pass, will render it impracticable, without extraordinary expense, to make the proposed improvement'." *Id.* Where only part of a man's land is needed for a public purpose, the necessity for that part does not justify the taking of the whole. *Id.* at 406. A governing body cannot seize private property and turn it over to another on *vague grounds* of public interest. *Id.* For a use to be public, it must be *fixed and definite*. *Fallsbury v. Alexander*, 101 Va. 98, 106, 43 S.E. 194 (1903). The use which the public is to have of the property

or the manner in which the public is to be benefited by the use of it must be fixed and definite; it may not be vague, indefinite, nor uncertain. *Id.*

The Court cannot expect the City to set forth each element of construction and minute detail of its plan, *see Stanpark*, 101 S.E.2d at 531; however, the Court can require the uses of the particular elements themselves to be defined. *Carneal*, 106 S.E. at 406. The Chapter 230 Amendment is constitutionally defective because it provides no outer limits restricting what may constitute "incidental facilities." The test of the validity of the statute is not merely what has been done under it, but what may be done under it. *Id.*

In the present case, testimonial evidence and exhibits indicate the City's plan for the land which it seeks to condemn is far from definite. In his testimony on July 30, 1987, Mr. Leidinger (a member of the City Council) stated, in reference to the proposed gasoline station, that certain elements in the project had "not yet been firmly decided upon." Proceedings Excerpt, July 30, 1987, page 11. When asked what might be done with this condemned land under the auspices of Chapter 230, what alternative use might be made of the land, Mr. Leidinger responded:

> The alternative is to add an additional use to the land that we are purchasing for a very specific use. . . It could be a gasoline station . . . Could be a motel, perhaps; perhaps if the public necessity were there, we could put a police station there; we could put an incinerator there; we have the power under the law to establish ports and harbors, we can put one of those there; we could put streets there; we could put a public building there. . . We could put a school there. We could put a 15-story public office building there; we could put anything there that we are authorized in the law to put there.

Proceedings Excerpt, July 30, 1987, page 12.

While the Court understands completely the tenor of that response, and the context in which it was made; nevertheless, it, to a substantial degree, summarizes

the conclusions inescapably garnered from all the evidence and exhibits, that the city has not yet defined the elements of the proposed Visitor Orientation Center; nevertheless, the City seeks a blanket condemnation asserting that each parcel is necessary. Since the elements of the project are so undefined and apparently limitless, the "public use" of Chapter 230 does not meet the requirement of "fixed and definite."

Is there any limitation which can be set to the exertion of legislative will in the appropriation of private property? The moment the mode of its use is disregarded and we permit ourselves to be governed by speculation. . . that moment we are afloat without any certain principle to guide us. *Carneal*, 106 S.E. at 406.

As previously stated, the Court must test the validity of a statute based upon what *may* be done under it as well as what is actually done. *Id*. at 405. Chapter 230 allows the City to condemn without clearly defining public uses for the land which it takes. Thus, it is invalid.

Furthermore, even if these "incidental facilities" were clearly defined, the City has not demonstrated that they are necessary for a public purpose. By definition, they are *merely incidental* to the Visitor Orientation Center project and not necessary to its main public purpose; therefore, the City acts unconstitutionally when it condemns land for these incidentals without more definitiveness in its plans and purposes. The Court should note that there are a line of redevelopment cases which hold that incidental private uses will not necessarily destroy a public purpose. *City of Charlottesville v. DeHaan*, 228 Va. 578, 323 S.E.2d 131 (1984); *Infants v. Va. Housing Development*, 221 Va. 659, 272 S.E.2d 649 (1980); *Hunter v. Redevelopment Housing Authority*, 195 Va. 326, 78 S.E.2d 893 (1953). This line of cases is, however, distinguishable and unconflicting with the case at bar for a number of reasons. First, in *Hunter*, the Court itself was careful to distinguish the line of redevelopment cases from *Carneal*. *Id*. at 900. In redevelopment cases where the public use is to clear blight from a slum area, a resale of a part of the land condemned is part of the public purpose. *Id*. The resale acts to make the area viable; therefore, "incidental" private benefit is actually essential to accomplish the public purpose.

The public use for the land in the present case is the creation of a Visitor Orientation Center. The main purpose of the Visitor Orientation Center is to provide tourists with a place to garner information on the area and to promote tourism in Virginia. The main purpose is not to provide gasoline services or a gift shop. While these things may be profitable to the City in terms of lease rentals, and may make the Visitor Orientation Center a one-stop facility for tourists, the City has not shown that the public purpose behind a visitor center would be otherwise frustrated if these incidental facilities were unavailable. On the contrary, Mr. Leidinger's testimony seems to indicate that none of these particular elements is essential to the project since they might at any time be changed. Proceedings Excerpt, July 30, 1987, page 11, lines 2-18; pages 17-19.

In *Tiller v. Norfolk and Western Railway Co.*, 201 Va. 222, 110 S.E.2d (1959), the court allowed condemnation of property incidental to the project because it was so essentially a part of the project that it constituted a public use. Similarly, the court in *City of Richmond v. Old Dominion Iron & Steel Corp.*, 212 Va. 611, 186 S.E.2d 30, 33 (1972), allowed the taking of land incidental to the project because otherwise the use by the public would be frustrated.

In the present case there is no dire need for the "incidental facilities" the City seeks to include in the Visitor Orientation Center project. To the contrary, there is evidence from the Petitioners that they are ready, willing and able to work with the City and provide whatever "incidental facilities" on their properties as the City may deem appropriate and desirable. Thus, the Court should not permit the City to exercise its power of eminent domain for such purposes.

The second distinguishing factor between the case at bar and the redevelopment funding line of cases is that an entirely different presumption of statutory validity exists between the two. The City, relying on *City of Charlottesville v. DeHaan*, argues that the case should be analyzed in light of what constitutes the animating purpose of the project. In *City of Charlottesville*, the Court held that, since the animating purpose was to serve the public welfare, the statute was valid. *See City of*

*Charlottesville*, 323 S.E.2d at 134. "Any benefit to the developer was incidental--not insignificant or inconsequential--but incidental;" therefore, the public purpose was not destroyed. *Id.* at 136.

The flaw in the City's analysis is that the line of cases it relies upon deal exclusively with credit clause problems. "The legislature has wide discretion in determining the best interests of the public and every possible presumption is to be indulged in favor of the validity of a statute" when credit clause issues are at bar. *Id.* at 133. *See also Infants*, 272 S.E.2d at 655. Such is not the case is eminent domain cases however. In the construction of statutes conferring the power of eminent domain, every reasonable doubt is to be solved adversely to that right, i.e. that power. The taking of private property, however, is a matter of serious import and is not to be permitted except where the right is plainly conferred and the manner of its exercise has been strictly followed. *Carneal*, 106 S.E. at 406, 407.

> *There is no better settled rule of law. . . than this*, that statutes which encroach on the personal or property rights of the individual are to be strictly construed, and this is especially the case where it is claimed that the statute delegates to a corporation, whether municipal or private, the right of eminent domain, one of the highest powers of sovereignty pertaining to the State itself, and interfering seriously and oftentimes vexatiously with the ordinary rights of property. *Blondell v. Gunter*, 118 Va. 11, 13 (1915).

Thus, the presumption is not in favor of the statute and the cases cited by the City in support of its "animating purpose" argument do not apply.

For the above-stated reasons, this Court finds the Amendment to Chapter 230 of the Acts of Assembly of 1987 and Ordinance No. 87-122 of the City of Richmond are unconstitutional.

The Court now considers whether Ordinance No. 87-122 condemns Petitioners' property without having properly

heard and resolved the issue as to the necessity for such taking.

Petitioners argue that 87-122's declaration of necessity is invalid because it preceded the General Assembly's amendment to the City's Charter giving the City the authority to construct a Visitor Orientation Center. This argument is without merit. The Uniform Charter Powers Act of Virginia permits cities to adopt a charter provision which allows the City to exercise any power not specifically denied to them by the constitution, their charter, or laws of Virginia. See Va. Code 15.1-839. Chapter 2, Section 2.01, of the Richmond Charter gives the City this power. Thus, the City did not need a specific declaration of authority to begin proceedings to establish a Visitor Orientation Center.

Finally, the Court considers whether Petitioners can object to the site chosen by the City for the proposed Visitor Orientation Center on the basis that other land was more appropriate.

The location, site, and details of a project, once public purpose is established, are legislative questions under Va. Code 15.1-237. Thus, Petitioners cannot object to these political decisions by the City. The Court, however, need not make any determination on these political decisions for two reasons. First, Va. Code 15.1-237 allows the City to make its own determination on the necessity of a certain site and area. Second, the condemnation attempt is unconstitutional for lack of a fixed and definite public purpose; therefore, the question as to the appropriateness of the site chosen is now irrelevant to these proceedings.

Accordingly, this Court concludes that the Amendment to Chapter 230 of the Acts of Assembly, in conjunction with Ordinance 87-122 of the City of Richmond, unconstitutionally permits the City to condemn land without a fixed and definite plan of public use for all of the parcels it seeks to condemn. The testimonial evidence presented to this Court belies any claims by the City that the Visitor Orientation Center is entirely for a well-planned public purpose. Accordingly, the City should not be permitted to exercise its power of eminent domain.

The City of Richmond will be enjoined from proceeding with condemnation proceedings pursuant to the Act and Ordinance herein declared unconstitutional.